THE STATE OF TEXAS EX REL. BARRY V. W. C. CONNOR.

No. 52.

1. Facts Agreed to and Embodied in the Judgment.
An agreed statement of facts upon which a case was tried in the court below, and which the court embodied in its judgment, is sufficient, in the absence of a statement of facts, findings of fact by the court, or agreed case for appeal under the statute, to authorize a revision of the judgment upon matters growing out of such facts .................... 136

2. Agreement as to Facts.
See agreement, taken in connection with the information referred to, held sufficient for judicial action; it being an agreement that 1747 unnumbered ballots had been cast in the election; that if said votes should not be counted relator should have judgment, and if they should be counted the respondent should have judgment........................ 137

3. Numbering Ballots—Constructive Repeal.
The Act of April 12, 1892, entitled "An act to provide for the registration of all voters in all cities containing a population of 10,000 inhabitants or more, and to protect the purity of the ballot in such cities, and to provide penalties for the violation of the same," provides that "any elector, or any one who shall, contrary to the provisions of this act, place any mark on or do anything to his ballot by which it may afterward be identified as the one voted by any particular individual, upon conviction shall be punished," etc. *Held*, that this does not repeal or control articles 1694 and 1697. Revised Statutes, which prescribe that all ballots shall be numbered, and that ballots not numbered shall not be counted ............................................. 138

4. Same.
The Legislature did not intend, in passing the Act of April 12, 1892, to prohibit the numbering of ballots in accordance with article 1694, Revised Statutes. The clause in section 28 of the Act of 1892, prohibiting the marking, etc., did not apply to the numbering as provided by the general law........................................................ 139

5. Unnumbered Ballots.
The article 1697 prescribes that ballots not numbered as prescribed in article 1694, Revised Statutes, shall not be counted. The Legislature, under the Constitution, had the power to make such rule, and courts can not disregard it ................................................. 142

## 6. Right of Suffrage.

The right of suffrage is conferred by the Constitution. and is not one of the natural and inalienable rights which are excepted out of the powers of government. The elector takes the right subject to the limitations imposed by the Constitution and such as the Legislature may impose, not inconsistent with the fundamental laws.......................... 142

## 7. Mandatory Statute.

The law commands that the *number* shall be written on the ballot, and forbids those not numbered to be counted. Taking the two articles together, with section 4, article 6, of the Constitution, there can be no doubt that they are mandatory...................................... 143

CERTIFIED QUESTIONS from Court of Civil Appeals for Fifth District, in an appeal from Dallas County.

*John P. Gillespie*, *Harris & Knight*, and *F. M. Etheredge*, for appellant.

*R. E. Cowart*, *W. S. Simkins*, *J. C. Kearby*, *A. P. Wozencraft*, *Wm. P. Ellison*, *G. G. Wright*, and *J. M. McCormick*, for appellee, on motion for rehearing. — 1. Under the limited power over municipal corporations possessed by the Legislature, it was competent for it to provide that the will of the people within such corporation, on any subject in which they alone and the government were interested, should be ascertained by a mode other than that contemplated by section 4, article 6, of the Constitution. By sections 14 and 15 of the amended charter of the city of Dallas, it is provided that the method of holding and conducting elections within said city should be such as is provided by the laws of the State of Texas applicable thereto, and such as the city of Dallas should provide by ordinance. By section 30 of the Act of April 12, 1892, it is provided, that cities containing a population of ten thousand inhabitants may, through their city councils, adopt such methods not inconsistent therewith to protect the purity of the ballot at elections, held at their municipal elections. On February 6, 1893, the city council adopted the Act of April 12, 1892, and provided that all elections in the city of Dallas should be held in accordance therewith, as far as practicable, and repealed all ordinances in conflict therewith. Const. 1876, art. 3, sec. 56, art. 11, sec. 5; Electric Light Co. v. City of Dallas, 83 Texas, 243; Graham v. City of Greenville, 67 Texas, 66; 1 Dill. on Mun. Corp., sec. 39; People v. Hoffman, 5 N. E. Rep., 596; Amended Charter of the City of Dallas, secs. 14. 15; The State v. Waxahachie, 81 Texas, 626.

2. By the Act of April 12, 1892, the Legislature, intending in the furtherance of ballot reform to remedy the evils of corruption, bribery, intimidation, etc., then prevailing at elections in large cities, adopted the Australian ballot system, the leading feature of which is a provision for absolute and compulsory secrecy of the ballot and the prohibition of all

identifying marks.   And if, under the construction of articles 28 and 31 of said act, there should remain any doubt as to the intention of the Legislature to repeal articles 1694 and 1697, if at any time applicable, then the well known and recognized policy of the Australian ballot system, which this court judicially knows it was the purpose of the Legislature to adopt in the Act of April 12, 1892, should have the force of those " positive and express words" which the court deems necessary' to justify them in declaring that the Legislature did not intend that the ballots should be numbered.   Bryan v. Sundberg, 5 Texas, 424; Rodgers v. Watrous, 8 Texas, 62; Camley v. Stanfield, 10 Texas, 549; New Jersey S. B. Co. v. Pleasanton, 8 Wall., 478; The State v. Stoll, 84 U. S., 651; Heath v. Wallace, 138 U. S., 573; Wigmore Australian Ballot, pp. 3, 14, 15, 21, 27–49, 192; 6 Am. and Eng. Encycl. of Law, 349, note 1; 28 Cent. L. J., 78, 153, 205; Parvin v. Winberg, 30 Am. St. Rep., 262; Opinion Judges, 21 Atl. Rep., 962, 963; The People v. Pease, 27 N. Y., 81; The People v. Chilcott, 16 Mich., 283; Williams v. Stein, 10 Am. Rep., 97; Woodward v. Sarsons, 44 L. J., 293.

3.   Again, in so far as the municipal election in the city of Dallas is concerned, as contemplated by the provisions of April 12, 1892, we do not think the court is called upon to search for any express repeal of articles 1694 and 1697.   A reference to the legislative policy of the State of Texas referred to under our first proposition will disclose the fact that in so far as cities and towns are concerned, these regulations of the method of conducting an election have never been in force since 1875. If it was the intention of the Constitution of 1876 that the Legislature should enact laws containing such regulations, it is clear that the Legislature has never obeyed the mandate; and in so far as the regulations of the duties of officers of elections are concerned, it has always been the legislative policy to commit the same to the respective city councils of the cities, to be by such councils provided by ordinance.   Rev. Stats., art. 345; McKinney v. O'Connor, 26 Texas, 5; Millican v. Phillips, 63 Texas, 390; Fowler v. The State, 68 Texas, 35; Cool. on Const. Lim., 5 ed., 617, 618; De Berry v. Nicholson, 11 Am. St. Rep., 771, 772; Prince v. Skilleen, 71 Me., 361; Hodge v. Linn, 100 Ill., 405; Attorney-General v. Common Council, 18 Am. St. Rep., 469; 1 Dill., sec. 197; 6 Am. and Eng. Encycl. of Law, 263; Talcott v. Philbrick, 20 Atl. Rep., 438; Parvin v. Winberg, 30 Am. St. Rep., 262; The State v. Hilmantel, 21 Wis., 566; Bowers v. Smith, 20 S. W. Rep., 101.

4.   The general design and object of a law is always kept in view and effectuated by the courts, even if it be necessary in so doing to restrict the force of subsidiary provisions which otherwise conflict with the paramount intent.   And where it is shown that an irregularity had no bearing upon the result of an election to the prejudice of contestant, a court will not set aside the clearly ascertained will of the electors, even though

such irregularity was in conflict with statutory provisions otherwise man-
datory.    Fowler v. The State, 68 Texas, 35; De Berry v. Nicholson, 11
Am. St. Rep., 771; Giddings v. Clark, 3 Cong. Elec. Cases, 91; Prince v.
Skilleen, 71 Me., 361; Dill. on Mun. Corp., sec. 167, note 1; Lanier v.
Gallatas, 13 La. Ann., 175; Bowers v. Smith, 20 S. W. Rep., 101.

BROWN, ASSOCIATE JUSTICE.—The following questions of law were
certified to this court by the Court of Civil Appeals for the Fifth Supreme
District:

"First. Is an agreed statement of facts upon which a case was tried in
the court below, and which the court embodied in its judgment, sufficient
in the absence of a statement of the facts, or findings of fact by the court,
or agreed case for appeal under the statute, to authorize a revision of the
judgment upon matters growing out of such facts?

"Second. Is the statement in regard to the 1747 unnumbered ballots,
as contained in the first clause of the said agreement set forth, a suffi-
ciently certain statement of the facts as to show how said ballots were cast
and counted as to authorize this court to revise such judgment upon the
facts?

"Third. Is it necessary under the Constitution and laws of Texas and
the charter of the city of Dallas, as set forth in said above agreement,
after the adoption by the city council of the city of Dallas of the Act of
April 12, 1892, commonly known as the 'Australian ballot system,' that
all ballots cast in an election in said city for city officers shall be num-
bered; and if so, is such requirement directory or mandatory?

"Fourth. If such unnumbered ballots can in any event be counted, can
this be done by the court in the absence of testimony showing the bona
fides of the ballots?"

To the first question we answer, that the agreed statement of facts,
made and signed by the counsel and parties to the cause, and embodied
in the judgment of the court, fully authorizes the Court of Civil Appeals
to review that judgment upon any question arising upon the facts therein
stated.

Article 1293, Revised Civil Statutes, is as follows:  "The parties may
in any case submit the matter in controversy between them to the court
upon an agreed statement of facts, made out and signed by them or their
counsel, filed with the clerk, upon which judgment shall be rendered as
in other cases; and in such case the statement so agreed to and signed
and certified by the court to be correct, and the judgment rendered
thereon, shall constitute the record of the cause."

Incorporating the agreed statement of facts in the record by the court
is as much an approval as if the judge had made a certificate under the
statute.    The object of requiring a statement of facts to be made out, is

to place before the appellate court all the facts upon which the judgment was rendered.   Article 1293 provides the manner in which this may be done before the trial is had.   The law was substantially complied with by the agreement made and the incorporation of that agreement in the record.   Fowler v. Simpson, 79 Texas, 617;  Hill v. Baylor, 23 Texas, 263.

Article 1333, Revised Civil Statutes, provides for the filing by the court of the findings of fact and conclusions of law or a special verdict by a jury, in either of which cases an appeal may be taken without other statement of facts.   Article 1414, Revised Statutes, permits the parties to present their case to the court of appeals upon an agreed statement of the facts and proceedings, certified to by the court after trial.   In each of these methods the same result is reached of presenting to the appellate court, in condensed form, the material facts upon which the judgment was rendered.   In Salinas v. Wright, 11 Texas, 578, this court said: "To authorize the revision of a judgment on the merits, a formal statement of facts is not essential where all the evidence legally and conclusively appears by the record."   In that case the facts appeared by bill of exceptions.   It conclusively appears from the record in this case that all the evidence which was introduced, and upon which judgment was rendered, is embraced in the agreement signed by counsel and the parties and embodied in the judgment of the court.

Second.  The statement contained in the first clause of the agreement as set forth is sufficiently explicit to enable the court to revise the judgment on the facts, and to enter judgment in accordance with the agreement.  If there was any doubt arising upon the language of the agreement, it refers to the " first amended original information," which alleges, that the 1747 ballots were unnumbered, and were counted and included in the aggregate of the vote; that if they had not been so counted, relator would have received a plurality of all votes cast, and being counted, the respondent received such plurality.   There is no reason why the parties to this character of proceeding may not make agreements as in any other case.  If it had been a suit for land, and the agreement had read, " If the court shall hold that the deed from A to B is valid and sufficient to pass title to the land, then judgment shall be entered for the plaintiff; but if the court shall hold that said deed is invalid, then judgment shall be entered for the defendant," no question would be made of the sufficiency of the agreement to authorize a judgment in accordance therewith.

Third.  The third question propounded embraces two propositions:

1.  Did the law require the officers conducting the election in the city of Dallas to number the ballots of the electors, in compliance with article 1694, Revised Statutes ?

2.  If so, could the officers who conducted the election legally count the ballots not numbered, and can the court sustain the counting of such unnumbered ballots ?

Articles 1694 and 1697 of the Revised Statutes were in force in the city of Dallas at the time of the election in question, and it was the duty of the officers holding the election to number the ballot of each elector in accordance with the requirements of article 1694. The prohibition contained in article 1697 is binding upon all courts, as well as officers of the election. The law is mandatory, and can not be disregarded. If ballots not numbered were counted in such election, such ballots were illegal, and must be rejected by the court upon an examination and revision of the judgment rendered.

It is claimed on behalf of the respondent, that the law of April 12, 1892, entitled ''An act to provide for the registration of all voters in all cities containing a population of ten thousand inhabitants or more, and to protect the purity of the ballot in such cities, and to provide penalties for the violation of the same,'' prohibits the numbering of ballots in accordance with article 1694, above referred to, and by implication repealed said article. The following language of said act, contained in the twenty-eighth section, is relied upon to sustain the contention upon this point: ''Any elector or any one who shall, contrary to the provisions of this act, place any mark upon or do anything to his ballot by which it may afterward be identified as the one voted by any particular individual, upon conviction shall be punished,'' etc.

By the Act of March 16, 1848, the officers of election were required to '' write and number the name of each voter;   *   *   *   one of the managers shall in every case, at the time of receiving the ticket or ballot, write upon it the voter's number corresponding with the clerk's list;   *   *   *   no ticket not thus numbered shall be counted or noticed in counting out the votes.'' This continued to be the law in Texas until 1870, when the Twelfth Legislature enacted a statute by which it was provided, that one of the judges of election should write upon each ticket one or all of the words '' State,'' '' District,'' and '' Congress,'' according as the voter might be entitled to cast his ballot for one or all of said offices. It was made a penal offense for any officer of election to place any other mark upon any ballot. Laws 12th Leg., sec. 19, p. 131.

An election for members of Congress was held in the State in 1872, and in Brazos County the ballots were numbered as under the law of 1848. When the returns were to be made up and certificate of election given, Governor Davis excluded from the estimate the vote of Brazos County, because the ballots were numbered, alleging as his reason that the numbering of the ballots operated to intimidate voters. Note to art. 6483, 2 Pasch. Dig. Laws. The Thirteenth Legislature, which assembled in 1873, repealed the Act of 1870 and re-enacted substantially the law of 1848 on this point.

The constitutional convention which framed the Constitution that was adopted in 1876 inserted in that instrument the following provision:

" Section 4 [Article 6]. In all elections by the people the vote shall be by ballot, and the Legislature shall provide for the numbering of tickets, and make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box; but no law shall ever be enacted requiring a registration of voters of this State "

Two important changes had been made in the manner of conducting elections in this State; the registration of voters was required and the numbering of ballots had been forbidden. The law requiring the numbering of ballots had been restored, and the registration law had been repealed; but to make sure that such laws should not be again enacted, the section quoted was framed and adopted as part of the Constitution. This section of the Constitution was framed and adopted in view of the recent changes of the law and of the action of the Governor in the case referred to. The language is such as to manifest the purpose to declare that the numbering of ballots was not calculated to intimidate voters, but was a means necessary to " detect and punish fraud and to preserve the purity of the ballot box." The Legislature which assembled in 1876, the first after the adoption of the Constitution, promptly enacted articles 1694 and 1697 of the Revised Statutes.

When section 4 of article 6 of the Constitution was amended, omitting the prohibition against registration, in 1891, the same language was used, with the addition of the permission to the Legislature to enact laws for registration of voters in cities of 10,000 population or more. The purpose to have the ballots numbered was again expressed and commanded to be observed. The permission given to provide by law for the registration of voters in such cities as had the requisite population was intended as an additional safeguard against fraud in elections.

We must presume that the laws in force on the subject of numbering ballots and the prohibition as to counting the ballots not numbered were in the minds of the members of the convention and the Legislature when these provisions were framed, and the laws were not condemned, but approved.

We can not presume that the Legislature in enacting the law of April 12, 1892, intended to prohibit the doing of an act which was commanded by the Constitution and the law enacted in pursuance thereof. Nothing short of positive and unequivocal words could be so construed.

The Legislature did not intend, in passing the Act of April 12, 1892, to prohibit the numbering of ballots in accordance with article 1694. Section 28 of that act does not justify any such conclusion. It prohibits officers and others, including the elector, from doing certain acts before the ballot is deposited, and was intended to protect the ballot from marks which would enable any one, without looking into it, to tell by whom it was cast, and to prevent any officer of the election to tell by whom it was voted without comparison to the poll list. For example, suppose that the

elector or other person should place upon the ballot a mark so that the officer of the election or other person looking on while the ballots were being counted could see or determine by whom it was cast, then in calling the ballot for counting, the vote of such person could be exposed. The object was to prevent the elector from being exposed unlawfully.

Looking to the journals of both houses of the called session of the Twenty-second Legislature, we get the history of the passage of this law, which throws light upon the intention of the Legislature. The Senate passed an act to govern all elections, framed after the plan of the "Australian" system, in which was embraced, in substance, section 28 of the law under consideration, with almost the same language as that upon which the appellee's counsel rely to sustain their contention. In other provisions of that bill were the direction to number the ballots, as required in article 1694. The first twenty-two sections of the law of April 12, 1892, constituted the latter part of the Senate bill. It was not passed by the House. The House, however, passed a bill to provide for *registering* voters in cities of ten thousand population or more, being the first twenty-two sections of the Act of April 12, which went to the Senate, and there the last sections of the law now being considered were added by way of amendment, almost literally taken from the bill passed by the Senate and sent to the House. The language used in the Senate bill was in substance, " any elector or any one who shall, contrary to the provisions of this act, place any *distinguishing* mark upon or do anything to his ballot by which it may be identified as the one voted by any particular individual," etc. It will be seen that the difference between the language quoted and that in the law as it passed consists in omitting the word " distinguishing" and inserting the word " afterwards." Any mark by which a ballot could be identified must be a *distinguishing* mark, and such identification must be at a future time, that is *afterwards*. The language in each means the same thing. The words " contrary to the provisions of this act" referred to the *provisions* of the Senate bill, from which the section was taken and attached to the House bill, and was intended to except from the prohibition the marks authorized by that bill, which required the ballots to be numbered. We think that this explains the language upon which the counsel rely for the support of the proposition that it forbids numbering the ballots.

The Act of April 12 is not in itself a complete system for holding elections in cities of ten thousand population. It does not provide for keeping any poll books or tally sheets, nor for making returns of the election, nor for counting the vote and preserving the ballots. It is evidently intended simply as additional means of " detecting and preventing fraud, and preserving the purity of the ballot," which any such city may apply if five hundred of its citizens petition for it. It does not apply to all cities of ten thousand population, but to those only in which registration

may be ordered. The law does not continue beyond the election for which the registration is ordered, but at each election the same steps must be taken, else that law can not be enforced. If at the next election in Dallas for municipal officers no registration should be demanded, this law would not be in force, but the election would be conducted under the general law, and the ballots must be numbered; the result of which would be that the prohibition of numbering claimed to be expressed in the act would be put in force or not at the option of five hundred citizens of that city. It would be an extraordinary power for the Legislature to delegate to so few of the citizens, to suspend the operation of a general law of the State.

The right to petition for registration, and thereby put this law into effect within the cities having the requisite population, applies to elections for State, county, and precinct offices as well as to those for municipal offices. If the position that the numbering of ballots is forbidden by this law is sound, then in elections for State and county offices we would have the general law in force in all precincts in Dallas County outside of the city, and the ballots numbered in them; while in the city no number could be placed upon them. If a contest should occur, and it be charged that persons not qualified as electors were permitted to vote at a precinct outside the city, the ballots could be inspected and compared with the poll books to ascertain for which candidate the illegal votes were cast. If the contest was upon the ground that such persons voted inside the city, then no such investigation could be had, for the reason that without the numbers the ballots of the illegal voters could not be identified; and thus a discrimination would exist for which there can be no sound reason given, and fraud would be promoted in the cities, rather than prevented.

If the elections for State, county, and municipal officers should occur at the same time, and the law of April 12, 1892, is put into force in a city, then by the terms of section 24 of said act " all ballots used by the voters at said election shall be furnished by the officers conducting said election, upon which shall be printed the names of all candidates for State, county, city, or precinct offices upon one ticket," etc. The general law governing elections for State, county, and precinct offices requires the ballot to be numbered, and if the law governing election for municipal officers forbids such numbering, " with the names of each upon the same ticket," what can be done? If not numbered, so far as the State, county, and precinct election is concerned, they can not be counted; and if numbered, under the contention of appellee, so far as municipal officers is concerned, the officer placing the number thereon is liable to a heavy penalty.

These embarrassing consequences serve to show more clearly that the construction sought to be placed upon the law is not a correct interpre-

tation of it. No Legislature would have enacted a law involving elections in such complications and introducing such discriminations between citizens of different localities as to the exercise of a right equally sacred to all. It was believed that there was a necessity in cities, that did not exist in towns and country precincts, for additional means of protecting the voter from undue influence, and to preserve the ballot from the corrupting influence of fraud, and for this purpose the law was enacted.

It is claimed that the Legislature has no power to enact any law by which the elector may be deprived of the benefit of his ballot without fault on his part. The right of suffrage is conferred by the Constitution, and is not one of the natural and inalienable rights which are excepted out of the powers of government. The elector takes the right subject to limitations imposed by the Constitution, and such limitations as the Legislature may impose, not inconsistent with the fundamental law. While the right to vote is a valuable right, which should be duly guarded, the public has a right that the ballot should be protected from fraud, and this right in the public is paramount to the individual right of the citizen to cast his vote. When necessary to preserve the right of the public in a pure ballot, the right of a citizen to have his ballot counted must yield to the needs of the public good; as in many other instances the private right must be subservient to public necessity. But no elector is here claiming the right to have any one or all of the unnumbered ballots counted; and if it were so, no one of them could enforce it, because the ballot of no elector who cast one of those not numbered could be identified. In form this is a proceeding in the name of the State, but in fact it is a contest between two opposing candidates for the possession of an office. The exercise of the functions of that office is a right which belongs, under the Constitution and laws, to that one who was legally elected, and the right should be determined according to the rules prescribed by law.

Articles 1694 and 1697, Revised Civil Statutes, were enacted in pursuance of the commands of section 4, article 6, of the Constitution of this State. It was for the Legislature to determine the necessity, and the courts can not disregard the law. It is consistent with the constitutional requirement that the ballots be numbered, and is perhaps the only means by which fraud perpetrated by persons voting who are not qualified electors could be effectually punished; thus depriving the promoter of the fraud of its fruits. It may be that in some instances the failure to number might occur by reason of a misunderstanding of the law, or from negligence in the officer, and the voter might be deprived of the benefit of his ballot without his fault; but the Constitution has declared that it is one of the means to be adopted by the Legislature to detect, prevent, and punish fraud. The Legislature has so enacted, and it must be obeyed.

It is unnecessary to discuss the difference between directory and manda-

tory statutes.   The law commands that the number shall be written on the ballot, and forbids those not numbered to be counted.   Taking the two articles together, and especially in connection with section 4, article 6, of the Constitution, there can be no doubt that they are mandatory. "A clause is directory when the provision contains mere matter of direction and no more; but not so when they are followed by words of positive prohibition."   Bladen v. Philadelphia, 60 Pa. St., 466; Pearce v. Morris, 2 Ad. & El., 96.   Prohibitory words can rarely if ever be directory.   There is but one way to obey the command "*thou shalt not,*" which is to abstain altogether from doing the act forbidden.

The answer to the third question renders it unnecessary to answer the fourth.

Delivered November 16, 1893.