### NEW AMSTERDAM CASUALTY CO. v. HEBERT et al.   (No. 1505.)

Court of Civil Appeals of Texas. Beaumont.
June 2, 1927.

Rehearing Denied June 15, 1927.

1. **Master and servant** ⟨=⟩405(4)—Evidence held to support finding log hauler died of heat stroke.

Evidence *held* sufficient to support finding that workman transporting logs from woods to railroad switch died as result of heat stroke, in suit to set aside decree denying compensation to widow and minor children.

2. **Master and servant** ⟨=⟩405(4)—Evidence held insufficient to support finding that log hauler's death by heat stroke was caused by conditions made more hazardous by employment.

In suit to set aside decree denying compensation for death of one hauling logs from woods to railroad switch, which was caused by heat stroke, evidence *held* insufficient to support finding that death was caused by conditions made more hazardous by reason of duties of employment.

3. **Master and servant** ⟨=⟩373—Heat stroke is not compensable as "injury" or "personal injury" (Workmen's Compensation Act [Rev. St. 1925, art. 8309]).

Heat stroke *held* not "injury" or "personal injury," as defined by Workmen's Compensation Act (Rev. St. 1925, art. 8309), and therefore not compensable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Injury; Personal Injury.]

Appeal from District Court, Liberty County; Thos. B. Coe, Judge.

Suit by Mary Hebert and others against the New Amsterdam Casualty Company to set aside an award and final decree of the Industrial Accident Board. Judgment for

plaintiffs, and defendant appeals. Reversed and rendered.

Andrews, Streetman, Logue & Mobley, of Houston, and C. H. Cain and E. B. Pickett, Jr., both of Liberty, for appellant.

J. Llewellyn and P. C. Matthews, both of Liberty, for appellees.

HIGHTOWER, C. J. This suit was filed in the district court by appellee Mary Hebert, for the benefit of herself and her four minor children, against appellant, New Amsterdam Casualty Company, to set aside an award and final decree of the Industrial Accident Board of this state denying compensation claimed by Mary Hebert for herself and four minor children on account of the death of Adam Hebert, who was the husband and father of claimants. The plaintiffs' petition, upon which the case was tried, alleged, in substance, that Adam Hebert was an employee of Ike Glenn in Liberty county, Tex., on the 30th day of August, 1923, and that while engaged in the performance of the duties of his employment hauling logs from the woods to a railroad switch, he became so overheated or affected by heat that he suddenly died. It was alleged, in substance, that the 30th day of August, 1923, was an extremely hot day and that the work that Adam Hebert was required to perform was very heavy and arduous manual labor, and that on account of the extreme heat prevailing on that day in the woods where he was working, and on account of the heavy labor that he had to perform in the discharge of his duties, he became prostrated by the heat and died from the effects thereof.

Appellant answered by general demurrer and certain special exceptions, and by general denial, and then specially averred that Adam Hebert's death was caused by an act of God.

The case was tried with a jury and was submitted upon the following special issues:

"Question No. 1: Can you, from a preponderance of the evidence, determine the cause of Adam Hebert's death? Answer 'yes' or 'no.'"

To this question the jury answered, "Yes."

"Question No. 2: Of what did Adam Hebert die?"

To this question the jury answered, "Heat stroke."

"Question No. 3: Was Hebert's death caused by conditions made more hazardous by reason of the performance of the duties of his employment than applied to the general public?"

To this question the jury answered, "Yes."

The trial court entered judgment upon the verdict in favor of the appellees Mary Hebert and her four minor children for compensation, at the rate of $11.25 per week, for a period of 360 weeks, and apportioned a part

of the recovery to the attorney who represented the plaintiffs.

Appellant has duly appealed from the trial court's judgment and presents in this court several propositions, based upon proper assignments of error, challenging the correctness of the trial court's judgment, but we shall only specifically mention three of these contentions. The first is, in substance, that the finding of the jury to question No. 2 is without support in the evidence, and that, therefore, the judgment based thereupon must be reversed. The next contention is, in substance, that if the evidence was sufficient to show that Adam Hebert's death was caused by heat stroke, as found by the jury, that nevertheless the appellees were not entitled to recover, because "heat stroke," as found in this instance, resulting in death, is not such an "injury" or "personal injury" as makes compensable the death of an employee, under the Workman's Compensation Act of this state. The next contention is that the answer of the jury to special issue No. 3 is without support in the evidence. We shall dispose of these contentions in the order presented.

[1] As we understand this record, the evidence upon which the verdict and judgment in this case rest is without contradiction. In other words, the facts are undisputed. The evidence shows that on August 30, 1923, Adam Hebert was an employee of Ike Glenn, in Liberty county, Tex., and that his duties under his employment were to gather logs in the woods, some 3½ miles from a railroad switch, and to haul the logs on a wagon to the switch. The wagon used was an eight-wheel wagon, pulled by four mules, and Adam Hebert was required to haul four loads of logs a day from the woods to the switch with this wagon and team. The day of August 30, 1923, was a very hot day, and Adam Hebert had been engaged in the performance of his duties the greater part of that day, and had hauled three loads of logs from the woods to the switch, and had gone back to the woods for the fourth load, which would complete his day's labors. Between 4 and 5 o'clock on that day his dead body was found by one of his fellow employees lying near his wagon, and there was one log on the wagon and another log had been "snaked" out of the bushes or brush and drawn up near the wagon, and the cant hook that was used by Adam Hebert in handling the logs was hanging in the log laying on the ground. These logs were from 8 to 12 inches in diameter and about 12 feet in length. On this particular occasion Adam Hebert was working near the foot of a hill or elevation in the piney woods, where there was much undergrowth and bushes, and these logs that he had been hauling had been cut by log sawyers, who were also on the same day working in the same vicinity, and it was Hebert's duty to gather them up where they lay in the bushes, load them on his wagon, and haul them to the railroad switch. A shower or light rain had

fallen that afternoon shortly before Adam Hebert's body was discovered, and the atmosphere was very humid, and the temperature, as we have stated, very hot. When his body was discovered one hand was resting on his breast right over his heart, and the other was lying by his side on the ground. He was lying flat on his back, with his hat pulled down, or it had fallen down, nearly over his eyes. He was taken home and undressed and his body carefully examined, and no bruise of any character, nor any marks of violence of any character, were found upon any portion of his body. He was about 36 years of age, and was a powerful man physically, and was in perfect health up to the time of his death. He had never complained of any affection of the heart or other vital organs of the body, and had been able at all times to perform arduous manual labor such as he was performing at the time of his death. In answer to a hypothetical question, a physician testified for the plaintiffs that, in his opinion, Adam Hebert's death was caused by heat stroke.

Upon these undisputed facts, we have concluded that the jury was warranted in finding as they did to the second special issue, that Adam Hebert's death was caused by heat stroke, and therefore we overrule appellant's contention on that point.

[2] We shall now dispose of appellant's third contention, which is that the jury's answer to the third special issue is without support in the evidence. That answer was that Adam Hebert's death was caused by conditions made more hazardous by reason of the performance of the duties of his employment than applied to the general public. We have examined the statement of facts in this case at length, and have concluded that this contention must be sustained, as we understand the meaning of the question propounded to the jury in that connection. The undisputed evidence showed, as we have stated, that the intense heat that was prevailing in that vicinity was not confined to the particular spot where Adam Hebert suffered the heat stroke. On the contrary, the undisputed evidence in this case shows that all the employees working in the woods on that day, both the log sawyers and the log haulers, were exposed to the same character of heat, and there is nothing in this record to show that there was any artificial heat of any character that augmented the natural heat that brought about the death of Adam Hebert. So we sustain this contention and hold that the jury's answer, to the effect that Adam Hebert's death was caused by conditions made more hazardous by reason of the performance of the duties of his employment than applied to the general public, is without support in the evidence.

[3] We now proceed to appellant's main contention in this case, which is that assuming that Adam Hebert did die of heat or sun stroke, his death was not caused by an "injury" or "personal injury," as defined by the Compensation Act of this state, as construed by our courts.

Article 8309 of the Revised Statutes of Texas 1925 defines an "injury" or "personal injury" as follows:

"The terms 'injury' or 'personal injury' shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom.

"The term 'injury sustained in the course of employment,' as used in this law, shall not include:

"1. An injury caused by the act of God, unless the employé is at the time engaged in the performance of duties that subject him to a greater hazard from the act of God responsible for the injury than ordinarily applies to the general public."

In addition to the statute just quoted, appellant cites the case of Texas Employers' Insurance Association v. Jackson, 265 S. W. 1029, an opinion by our Commission of Appeals. The employee whose beneficiaries were claiming compensation in that case died of pneumonia. He was an automobile truck driver for the employer, and while performing his duties out in the rain he became thoroughly wet and cold several times in succession, and in consequence contracted pneumonia, which disease resulted in his death. The Commission of Appeals held, in substance, that Jackson's death was not the result of an accidental injury sustained in the course of his employment, as contemplated by our Legislature and defined by article 8309, supra. In that case the Commission of Appeals, speaking through Judge Bishop, quotes from the opinion of the Supreme Court in Middleton v. Texas Power & Light Co., 108 Tex. 109, 185 S. W. 560, in which Chief Justice Phillips used this language:

"Here the character of injuries, or wrongs, dealt with by the act becomes important. Notwithstanding the breadth of some of its terms, its evident purpose was to confine its operation to only accidental injuries, and its scope is to be so limited. Its emergency clause declares its aim to be the protection by an adequate law of the rights of employés injured in 'industrial accidents,' and the beneficiaries of such employés as may be killed 'in such accidents.' * * * The injuries, or wrongs, with which it deals are accidental injuries, or wrongs."

Then Judge Bishop further proceeds in the Jackson Case as follows:

"Here we have an employee in the course of his employment getting wet. As a natural result of getting wet he contracted cold, and pneumonia resulted. While the disease was the natural result of getting wet, the mere getting wet was not a 'damage or harm to the physical structure of the body,' and, unless it was, it could not be said to be an 'injury' or 'personal injury,' for which compensation is allowed by the statute. For, before compensation may be had for the disease, it must be an 'injury' provided for by the statute, and it cannot be such

'injury,' unless it naturally results from 'damage or harm to the physical structure of the body.'"

Judge Bishop concluded in the Jackson Case as follows:

"For the injury sustained by defendant in error is not such as is contemplated by the act. It is not 'damage or harm to the physical structure of the body' from which disease or infection naturally resulted."

Another authority relied upon by appellant is the opinion of our Commission of Appeals, approved by our Supreme Court, in the Case of Ætna Life Insurance Co. v. Graham and others, 284 S. W. 933. In that case the employee, a young lady, was exposed, while performing the duties of her employment and in her natural surroundings, to the inhalation of poisonous fumes necessarily used in the employer's business, and from the inhalation of these poisonous fumes, acting upon her lungs, tuberculosis was caused, from which disease she afterwards died, and it was claimed by her beneficiaries that her death was compensable, but this claim was denied by the court, and it was held that no recovery could be had 'because, as the writer of the opinion in the Graham Case said:

"There is no escape, as we see it, from the conclusion that Miss Artie's death was not due to an accidental injury within our Compensation Act. Our statute has never gotten away from the central thought that the injury must be accidental in its nature. It is only upon that theory that the act itself has been held constitutional by our Supreme Court."

It is true that the court, in that case, reached the conclusion that the disease, tuberculosis, from which Miss Graham died, was an occupational or industrial disease, and that such a disease is not compensable under the Compensation Act of this state. Therefore, it might be plausibly argued that the Graham Case does not necessarily sustain appellant's contention in the instant case. Still the opinion in the Graham Case as a whole, speaking of "injury" and "personal injury" and "accidental injury," as those terms are used in the Compensation Act of this state, lends much weight to the contention of counsel for appellant in this case that the cause of Adam Hebert's death, heat stroke, was not such an "injury" or "personal injury" as is made compensable by our statute.

Another authority relied upon by appellant here is the opinion of our Commission of Appeals in the case of Buchanan v. Maryland Casualty Co., 288 S. W. 116. In that case the employee developed typhoid fever, which it was admitted was caused from the drinking of impure water and eating impure food furnished by the employer. He died from typhoid fever, and his beneficiaries filed claim for compensation. In denying recovery in that case the court held, in substance, that the disease, typhoid fever, from which the employee died, was not compensable because his death was not the direct result of an "injury," and held that an "injury," in order to be compensable under our act, must be to the physical structure of the body. The court further said in that case:

"This language has been construed to mean that the disease must result from violence upon the external portion of the body."

Another case relied upon as sustaining appellant's contention here is that of Security Union Casualty Co. v. Perry O'Pry, 294 S. W. 606, very recently decided by the Amarillo Court of Civil Appeals. A copy of that opinion, however, has been filed in this record by counsel, and we have given it consideration. The opinion of the court in that case, among other things, shows the following:

"The plaintiff below alleged and proved, in substance, that on and before the 4th and the 14th day of July, 1925, he was in the employment of the Gulf Production Company and was engaged as a pumper; that his duties were being performed at the time of his injury in a low, sheet iron building, containing a large gas engine, and partially surrounded by oil well machinery, which was black and greasy; that said building had practically no ventilation; that the day was hot, and the atmosphere was humid; that it required about all of the physical strength of the plaintiff to turn said engine in his efforts to start or 'kick it off'; that each time before he attempted to start the engine he lighted the natural gas from a two-inch pipe and the blaze therefrom extended about a foot or more in height; that the heat and fumes from the burning gas added to the heat of the room; that the sheet iron building and the machinery inside and outside thereof intensified the natural heat of the sun to an abnormal degree, and in connection with the artificial heat produced therein by the burning gas, made it extremely; hot on the inside of the building and made it hotter than on the outside of the building and much hotter than the natural heat of the sun, and thereby subjected the plaintiff, while in the discharge of his duties, to greater heat than that to which the public generally was subjected in the same locality; that, while he was working and exerting himself to start the engine in said building, he became too hot, due to the intensified natural heat and the artificial heat, and was by reason of said heat caused to suffer a heat stroke or heat exhaustion, in that he suddenly fell to the floor in practically an unconscious condition and remained there for about an hour, after which he was able to get home."

The opinion goes on then to show the extent of the injuries that resulted from the heat stroke. The jury in that case found that the plaintiff's injuries were caused by heat stroke or heat exhaustion, and a judgment for compensation was entered upon the verdict, and on appeal the insurance company, among other things, contended that its request for peremptory instruction should have been sustained, and in that connection the Court of Civil Appeals said:

"Appellant presents as error the action of the trial court in refusing to give its requested peremptory instruction, because the uncontroverted testimony shows that the appellee did not sustain any accidental injury, and that his trouble or disease did not result from violence, upon the external portions of his body.

"In answer to certified questions from the Court of Civil Appeals of the Tenth Supreme Judicial District of Texas, at Waco, the Supreme Court says:

" 'Under statutes similar to ours, it is the uniform holding of the courts that, before any disease is compensable, it must be the direct result of an injury. Not only so, but that injury must be to the physical structure of the body. This language has been construed to mean that the disease must result from violence upon the external portion of the body. This latter construction has been recently upheld by our Supreme Court. We refer to the cases of Texas Employers' Insurance Association v. Jackson (Tex. Com. App.) 265 S. W. 1027, and that of Ætna Life Insurance Co. v. Graham (Tex. Com. App.) 284 S. W. 931. * ' * *

" 'In the Jackson case, an employee was forced by his duties to expose himself to incessant rains without proper protection furnished by his employer. He was drenched by water. It soaked in through his skin and body. He was chilled and contracted pneumonia. But in that case it was held that there was no external violence to his body and he was not permitted to recover. In the Graham Case, a girl employee contracted tuberculosis as the result of gas fumes she inhaled while performing her duty in dye works. But in that case it was held that she died from an occupational or industrial disease which was not due in any sense to any external violence. In neither of these cases was the decision influenced in any way by the question as to whether or not the employer was negligent. The Compensation Law does not depend upon negligence. It was merely held that there was no accidental injury within the purview of our statute.' Buchanan v. Maryland Casualty Co. (Tex. Com. App.) [283] 288 S. W. 116."

The court then proceeds:

"As we construe the holding by the Supreme Court in the above case, it is conclusive against appellee's right to recover under the facts as revealed by this record, and, in deference thereto, the judgment of the trial court is reversed and here rendered for the appellant."

Learned counsel for the appellees in this case rely largely upon a decision by the Galveston Court of Civil Appeals in the case of Texas Employers' Insurance Association v. Moore, 279 S. W. 516. In that case Mr. Justice Graves, writing the opinion, did hold that an injury or death resulting to an employee from "heat stroke," or "heat exhaustion," while performing the duties of his employment is such an injury as is compensable under our statute, article 8309, supra. Yet, in reaching that conclusion, the writer of the opinion seems to have stressed the fact that heat stroke in that case was not caused solely by the natural heat of the sun or the natural temperature, but that it was largely augmented by artificial heat, and that the employee there, Moore, was confined, in the discharge of his duties, in the basement of a building beneath the level of the street, and that the press room in which he was working for the Houston Chronicle Company as press feeder was in close proximity to a small boiler room, from which intense heat was emitted and mixed with the natural heat in the press room, and that this combined heat produced the employee's death. The court expressly found in that case that the employee was exposed, while performing the duties of his employment, to greater hazard by reason of his surroundings than the public generally were subjected to, and we think that the court was eminently correct in that conclusion. A number of authorities were cited by the Galveston court which seem to sustain the contention by the plaintiffs in that case that, where the heat stroke or sunstroke resulting in the death of the employee is brought about by intense natural heat augmented by artificial heat, such as was the situation in the Moore Case, it is properly held that the injury or death is compensable under statutes similar to ours. We are not informed as to whether a writ of error was prosecuted from the decision in the Moore Case by the Galveston court. It is clear to us, however, that the holding of the Galveston court in the Moore Case is in direct conflict with the conclusion reached by the Amarillo court in the O'Pry Case. We do not find, however, any mention of the Galveston court's decision by the Amarillo court in disposing of the O'Pry Case.

The main reasoning given by the Galveston court for the conclusion there reached; that is, that the death of Moore, resulting from heat exhaustion, is compensable under our statute defining "injury" and "personal injury," because heat stroke is "damage or harm to the physical structure of the body," is hard to reconcile with the reasoning of the Commission of Appeals in the Jackson Case, supra, wherein it was held that the disease, pneumonia, from which the employee in that case died, was not compensable, because the disease was not the direct result of an "injury" or "personal injury" sustained by the employee in the course of his employment. In the Moore Case, Judge Graves said that any external agency that so affected the body, or any portion of it, as to still the heart and produce death was "damage or harm to the physical structure of the body," while in the Jackson Case, where the employee became wet and cold from rain while he was prosecuting his duties, which resulted in a disease, pneumonia, that so affected his lungs that death resulted shortly thereafter, was not such an "injury" or "personal injury" or "damage or harm to the

physical structure of the body" as is made compensable by our statute.

We will not carry this opinion to greater length, because, whatever may be our personal inclination to uphold the judgment in this case, we cannot do so consistently with the holding of our Commission of Appeals, approved by our Supreme Court, in the cases above mentioned, and that view seems to have been taken by the Amarillo court in the O'Pry Case. It results from these conclusions that the judgment must be reversed and here rendered in favor of appellant, and it has been so ordered.