## TEXAS INDEMNITY INS. CO. v. WARNER.

### No. 5873.

Court of Civil Appeals of Texas. Texarkana.

Jan. 15, 1942.

Rehearing Denied Feb. 26, 1942.

174

Abney & Abney, of Marshall, McDavid & McDavid, of Henderson, and R. L. Benoit, of Shreveport, La., for appellant.

W. L. Oliphant, of Dallas, for appellee.

JOHNSON, Chief Justice.

This appeal is from a judgment, rendered upon the verdict of a jury in response to special issues, awarding appellee, M. B. Warner, compensation for total and permanent disability caused by heatstroke received while fighting a fire on the premises of the Ohio Oil Company's lease, for whom he was working, and for whom appellant was the compensation carrier, under the Workmen's Compensation Law, Article 8306 et seq., Vernon's Texas Civil Statutes.

Points 1 and 2 in appellant's brief raise the contention that the evidence is insufficient to sustain the verdict and judgment, in that, it is claimed, the undisputed testimony shows that plaintiff's incapacity was solely the result of heart disease. Points 4, 5 and 6 raise the contention that the testimony was insufficient to show "good cause" for appellee's failure to file his claim with the Industrial Accident Board within six months from date of his injury, as required by Article 8307, Sec. 4a, Vernon's Texas Civil Statutes. We are unable to agree with either of the contentions. Appellee testified, in substance, that he had been working for the Ohio Oil Company approximately eighteen years, regularly six days per week, without losing any time; that he was in good health so far as he knew, and had always been able to do his work; that his job was firing the boiler, pumping water and oil, and cleaning up around the station on the lease; that in September or October of 1938, on a warm day, while fighting an oil fire on the lease, he became overheated, turned blind, "fell out", and remained unconscious for about fifteen to twenty minutes; that upon regaining consciousness he was extremely cold, clammy, sweaty and weak; that he then started to walk to his dwelling house (located about 300 yards distant), got about halfway and was, from there on, assisted by his wife and son-in-law to his home, where he went to bed; that in about two weeks he went back to work; that this occurred on Friday or Saturday and during that week he went to see a doctor who treated him; that the

doctor (Dr. McNabb of Carlisle, Texas) did not tell him that he had heart trouble or that his heart had been affected by the heatstroke; that in about two weeks he went back to work, thinking he had entirely recovered from the heatstroke, and that he continued to work, thinking that he had recovered from the heatstroke, until sometime before Christmas (November 11, 1938) while repairing a water pump he had a "falling-out spell", which was different from the symptoms when he became overheated, in that it began by a cramping in the lower part of the abdomen and radiated up into his left side and was not accompanied by blindness; that he thought this spell was caused by indigestion or something he had eaten, and did not associate it with the heatstroke he had previously sustained; that he continued to work until February 1, 1939, when he had a third spell similar to the second one, after which he was examined by the company's doctors and was pronounced unable to work and discharged on February 15, 1939, by reason thereof; that the company's doctor (Dr. Engle) told him at that time that he had a leaky heart, but did not tell that it was caused or affected by the heatstroke, from which he then thought he had entirely recovered; that he did not know that his heart trouble was the result of the heatstroke, that none of the doctors told him that the heart trouble was the result of the heatstroke, until about the time of filing his claim with the Industrial Accident Board, which was more than six months after receiving the injury; that during the time after returning to work about two weeks after receiving the heatstroke until he filed his claim, appellee thought that he had recovered from the heatstroke, and that the trouble was his stomach and heart, which troubles he did not associate with the heatstroke or know that it had caused same. Appellant makes criticism of the fact that appellee did not remember the exact date he received the heatstroke. Appellee testified that it was sometime in September or October of 1938, and further that during the week following the Saturday on which he received the heatstroke he went to see a doctor, at the nearby town of Carlisle, who treated him. He did not remember the name of the doctor, but it is shown to have been Dr. J. F. McNabb of Carlisle, Texas, who testified as a witness for appellant. He fixed the date of his first examination of appellee as being Monday, September 26, 1938. The two prescriptions which he wrote for appellee on that occasion were dated and

filled at a Carlisle drug store on September 26, 1938, which reasonably fixes the date of the heatstroke as being September 24, 1938. Dr. McNabb further testified for appellant that upon his first examination of appellee, September 26, 1938, he was of the opinion that appellee had chronic myocarditis, which is explained as being a weakening of the muscles of the heart; and that he had "aortic and mitral stenosis and insufficiency, that is the medical name for leakage of the heart." He was of the opinion that heatstroke would not cause the trouble which he found "on the valves" of appellee's heart. On cross-examination by counsel for appellee, Dr. McNabb testified that some of the conditions which he found could have been caused by heatstroke, namely, that "a heatstroke would cause the heart muscles to dilate and stretch the valve and give you an insufficiency or a leaky valve"; and that he found the presence of such conditions. He did not remember whether or not appellee told him of sustaining the heatstroke, he was more concerned with treatment of the conditions as he found them than with their causes. He treated appellee for indigestion of which he was complaining. He also treated him for the heart trouble which he discovered, but he did not tell appellee of having discovered the heart trouble or that he was treating him for heart trouble.

Dr. George E. Hurt, witness for appellee, testified that in April 1940, he made a physical, X-ray, laboratory, and heart graph examination of appellee and found him suffering from a bad heart condition; that he had "double mitral insufficiency"; that "the mitral valves had been destroyed and that he had an aortic regurgitation; in other words, a regurgitation of the blood from the larger blood vessels back into the heart"; that he examined appellee again on the day before testifying and found that all the valves of the heart had become involved; that appellee is not now and never will be able to work; that "if he takes proper amount of rest and is careful, he may be able to live a few years, but that he should now be in bed." In answer to a question incorporating a history of the case as related in appellee's testimony, Dr. Hurt testified that in his opinion the first spell appellee had, at time of fighting the oil fire, "was an acute heart attack, precipitated by exhaustion and by being overheated and putting too great a strain on the heart." He further testified that a man with a weak heart is more susceptible to a heat stroke or heat exhaustion than one with a strong

heart; that the symptoms of appellee getting too hot, turning blind, followed by unconsciousness and a cold, clammy feeling and extreme weariness were symptoms of having sustained a heatstroke or heat exhaustion, while fighting the fire; that the subsequent symptoms of cramping in the stomach are due to his heart condition; that "it is my opinion that this man probably had a disability to his heart or a heart that had been weakened before such injury took place, and that at the time he became over-exhausted or overheated, it put a tremendous strain on his heart at the time and that this strain caused this heart condition and breakdown and caused his disability * * * in my opinion, if this man had not suffered this condition (the heatstroke) he might have lived out a normal life or the normal extent of his life and died of something else, and not have been aware of any heart trouble * * * and would have continued pursuing his usual tasks, unless that or a similar type of injury had occurred." On cross-examination, Dr. Hurt further testified that upon his examination of appellee he found objective symptoms that would characterize his injury as resulting from heatstroke; that he was of the opinion that appellee had myocarditis, a weakening of the muscles of the heart, prior to sustaining the heatstroke; that the condition in which he found appellee's heart, causing his disability, was not the result of the myocarditis, but could have been the result of injury superimposed on the myocarditis. On redirect examination, Dr. Hurt further testified that a person may have myocarditis and be able to work, but that an injury such as heatstroke or heat exhaustion superimposed upon myocarditis may result in disability to work; that upon his examination of appellee he found no other symptoms or conditions which could have caused appellee's present disability, except the heat exhaustion or heatstroke; that he found the effects of cerebral edema which showed that he had previously sustained a heatstroke.

We think the testimony above set out is sufficient to support the findings of the jury that appellee's disability was caused by heatstroke, and that such disability was not caused solely by heart trouble. American General Ins. Co. v. Webster, Tex.Civ.App., 118 S.W.2d 1082; New Amsterdam Casualty Co. v. Herbert, Tex.Civ.App., 296 S.W. 688; Herbert v. New Amsterdam Casualty Co., Tex.Com.App., 1 S.W.2d 608. The fact that appellee may have had a diseased heart at the time of sustaining his injury would not prevent his recovery of compensation. Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356. The claimant is not required to show that the injury was the sole cause, or a proximate cause, of a disability, it is sufficient for him to show that the injury was a producing cause of the disability, Travelers' Ins. Co. v. Peters, Tex.Com. App., 14 S.W.2d 1007, and that the existing disease was not the sole cause of the disability. Commercial Standard Ins. Co. v. Noack, Tex.Com.App., 62 S.W.2d 72.

We are of the further opinion that the testimony, above related, is sufficient to support the following findings of the jury: "that from the time he returned to work down to the time he filed his claim for compensation, M. B. Warner believed that his disability was caused by disease unconnected with injury," and "that the failure of M. B. Warner to file his claim for compensation before he did file it was caused by his belief that the disability was caused by disease unconnected with injury," and "that in failing to file his claim for compensation before he did file it, M. B. Warner acted as a person of ordinary prudence would have acted under the same or similar circumstances." Texas Employers Ins. Ass'n v. Little, Tex. Civ.App., 96 S.W.2d 677; Texas Emp. Ins. Ass'n v. Roberts, 135 Tex. 123, 139 S.W.2d 80.

Points 3, 8, 9, 10, 11, 12 and 13, each seek a review of the action of the trial court in overruling appellant's objections and exceptions to the court's charge submitted to the jury. None of these points are supported by any proper assignment of error. The case is one in which a motion for new trial was required to be filed, and was filed, in laying a predicate for the appeal. The action of the trial court in overruling appellant's objections and exceptions to the charge was not complained of or assigned as error in the motion for new trial. The assignment of error (No. 11 in the motion for new trial) upon which point 3 is alleged to be based reads as follows: "The court erred in that part of the main charge to the jury designated as special issue No. 1." The other points are based upon like assignment of error as that above copied, except that they refer to special issues Nos. "16, 4, 6, 9 and 14." Such assignments of error do not in any way attempt to point out to the trial court or specify the ground, if any, upon which it was meant to be founded. They fail to substantially comply with either the old rules, Stillman v.

Hirsch, 128 Tex. 359, 99 S.W.2d 270, or the new rules Nos. 320 and 370, which are alike in providing that a ground of error not distinctly specified in the motion for new trial shall not be considered.

The judgment of the trial court will be affirmed.

### On Motion for Rehearing.

This being a case in which a motion for new trial is required as a prerequisite to the appeal, we held that an assignment of error in the motion for new trial merely stating that "the court erred in that part of the main charge designated as special issue No. 1," without specifying any ground on which it is claimed the charge is erroneous or in any way identifying any point of objection to the charge so that it could be understood by the trial court, was insufficient to authorize us to consider (over appellee's objection) points raised by appellant in this court alleging grounds of error (not fundamental) against the rulings of the trial court in overruling appellant's objections and exceptions made to the charge during trial of the case. In its motion for rehearing in this court, appellant insists that our holding is erroneous. It will be noted that the assignment of error in the motion for new trial here under consideration makes no reference to the ruling of the court overruling appellant's objections and exceptions to the special issue referred to, which is the particular ruling complained of in this court, The language in which it is framed does not indicate to the trial court whether complaint was intended to be made to the act or ruling of the court in submitting the special issue to the jury at a wrong time or place (as before the evidence closed, or before being read to the jury, or not in open court, or without giving appellant an opportunity to object to it), or whether complaint was intended to be made to the act or ruling of the court in overruling appellant's objections and exceptions made during trial of the case to the form and contents of the issue referred to. It does not point out any particular ruling of the court made with reference to the particular issue referred to. It does not specify, or direct the trial court's attention to, the particular grounds of error alleged in this court. Its general terms do not direct the trial court's attention to any point of objection to the charge.

After again reviewing the rules and authorities, keeping in mind the purpose of requiring the motion for new trial to be filed in the trial court and the important function it is intended to perform in that court, we do not think that any other interpretation can reasonably be placed upon the plain language of the rules than to say that they require an assignment of error in the motion for new trial shall not merely point out the particular charge complained of, but shall briefly refer to it in such a way as that the point of objection thereto may be understood by the court upon hearing the motion. This is true regardless of whether the case was tried under the rules declared in Stillman v. Hirsch, 128 Tex. 359, 99 S.W.2d 270, effective March 1, 1937, which we referred to as the old rules, or under the Rules of Civil Procedure adopted by the Supreme Court October 29, 1940, amended March 31 and December 31, 1941, which we referred to as the new rules, because they are not materially different with respect to the particular question here under consideration. The useful purpose of a motion for new trial, the decisions, statutes and rules governing the filing of same and what it shall contain, are fully set forth by the Supreme Court in the above-mentioned case, and it is not deemed necessary or proper to consume the space in here copying them. Some of the decisions noted in that case held that it was not necessary to assign error in the motion for new trial to the rulings of the trial court in overruling objections and exceptions made on trial of the case to the charge, reasoning that the court having once ruled would not change his ruling if the point of objection were again presented to him a second time. The court impliedly rejected such reasoning and reached the conclusion that a motion for new trial should be filed in all cases (except in instances described in Rule 71a—now Rule 324), embodying each ground of error complained of (including the grounds complaining of the rulings of the trial court overruling the objections and exceptions to the charge) and that any ground of error not distinctly specified in the motion for new trial is waived. There is no question but that (other than in the excepted instances not here involved) the rules announced in the Stillman case, as well as the new rules, require that grounds of error complaining of the rulings of the court overruling objections and exceptions to the charge must be assigned in the motion for new trial. Since it is required that such an assignment be made in a

motion for new trial, should it be framed in such language or form as to direct the trial court's attention to the point of objection? The question presented: Is an assignment of error in a motion for new trial sufficient in form which is couched in general terms merely referring to the particular charge complained of, without referring to any ruling made with reference thereto or in any manner identifying the point of objection so it could be understood by the court on hearing the motion? Rule 321, Tex.Civ.Procedure (Rule 67 for District and County Courts unchanged), as to form of an assignment of error in the motion for new trial, provides: "Each ground of a motion for a new trial * * * shall briefly refer to that part of the ruling of the court, charge given to the jury * * * which are designated to be complained of, in such a way as that the point of objection can be clearly identified and understood by the court." In Thompson v. Caldwell, Tex.Com.App., 36 S.W.2d 999, 1000, it is said: "It is the rule that, unless the error is fundamental, it must be assigned in a motion for a new trial in the district court. This means that the ruling, act, or conduct complained of must be pointed out or stated in the motion for a new trial in such a manner as to apprise the trial court of the error complained of." The case was one in which the assignment of error in the motion for new trial pointed out the particular charge complained of, and specified four grounds of error charged against it. Two additional grounds were attempted to be raised in the appellate court. The court refused to consider such two additional grounds, because not contained in the assignment of error in the motion for new trial. Clearly the case is authority for our holding that an assignment of error in the motion for new trial in this case, which merely points out the particular charge complained of, without specifying any ground on which it is claimed the charge is erroneous or otherwise identifying any point of objection thereto, would not authorize consideration of grounds of error alleged in this court. See San Antonio Traction Co. v. Emerson, Tex.Civ. App., 152 S.W. 468, writ refused.

We agree that an assignment of error in the court of civil appeals, as distinguishable from an assignment of error in a motion for new trial in the trial court, is sufficient and proper which merely "points out the particular charge complained of," without identifying any point of objection thereto. Clarendon Land, Investment & Agency Co. v. McClelland, 86 Tex. 179, 23 S.W. 576, 1100, 22 L.R. A. 105; Lang v. Harwood, Tex.Civ.App., 145 S.W.2d 945, and authorities there cited. In referring to assignments of error in the courts of civil appeals, in the McClelland case, supra, Judge Gaines said [86 Tex. 179, 23 S.W. 1103]: "It is to be borne in mind that the statute and rules which require errors to be assigned were intended primarily for the relief of the appellate courts * * *." Such assignments of error are followed by propositions or statement of the points on which the appeal is predicated, etc., clearly specifying the grounds on which it is claimed the charge pointed out is erroneous. With equal emphasis it may be said that a primary purpose of an assignment of error in the motion for new trial is for the relief of the trial court. It is not followed by any proposition or other matter showing the ground on which it is claimed the charge is erroneous, therefore it should not only refer to the particular charge complained of, but should briefly refer to it in such a way as to identify the point of objection. It is intended that the motion for new trial shall perform the important function of not merely laying a predicate for an appeal, but of presenting to the trial court each ruling or part of the proceedings objected to by the losing party, "in such way as that the point of objection can be clearly identified and understood by the trial court," in order that he may have an opportunity to review them under circumstances affording more deliberate consideration, not afforded or practicable during progress of the trial, so that they may be corrected or the new trial granted if need be. If the motion for new trial does not perform such office, it serves no useful purpose. To merely tell the trial court that he erred in a certain special issue does no more than to put him to sea on an unlimited search for unidentified points of objection to the charge which could easily have been stated but were not stated in the motion for new trial. We adhere to our original ruling, but it was thought that the question involved was of such importance as to call for further discussion of the reasons.

The motion for rehearing is overruled.