A. L. KULP v. THOMAS L. RAILEY.

No. 1474. Decided November 13, 1905.

**Contested Election—Official Ballot.**

A candidate nominated at the primaries having died before election, the executive committee of his party, without warrant by the existing law, nominated another whose name was thereupon printed on the official ballot and who received a majority of the votes at a fair election. His opponent, who had taken no proceeding before the election to have such name excluded from the ballot, contested the election on the ground that such votes for his adversary were improperly counted. Held that the election law of April 1, 1903 (Gen. Laws, ch. 101) did not require that such votes be rejected. (Pp. 315–319.)

Question certified from the Court of Civil Appeals for the First District, in an appeal from Harris County.

*John G. Tod,* for appellant.—The act of April 1, 1903, prohibits the nomination of candidates for county and precinct officers except by a primary election, held on the second Saturday in July, or by a primary convention, and the attempted nomination of appellee by members of the County Democratic Executive Committee was in violation of the express provision of said act. Gen. Laws, 1903, p. 149, secs. 84, 85, 86.

An official ballot, cast at a general election, containing the name of a

candidate who has been chosen in a manner prohibited or unauthorized by the provisions of the Act of April 1, 1903, is illegal. Secs. 54, 58, 75, 76, 77, 84, 86 and 94, of the Act of April 1, 1903, Gen. Laws of 1903, p. 149. Price v. Lush (Montana), 24 Pacific Rep., 749; Miner v. Olin, 159 Mass., 487; Queen v. Parkinson, L. R. 3, Q. B., 11; Mather v. Brown, 1 C. P. Div., 596; Howes v. Turner, 1 C. P. Div., 670; Monks v. Jackson, 1 C. P. Div., 683; Wigmore on Australian Ballot System, 2d ed., secs. 186, 187; Paine on Elections, sec. 427.

Upon the trial of any contested election case, the court should subtract all illegal votes from the poll of the candidate receiving them, and counting the legal votes only, decide the contest in favor of the party receiving a majority of the legal votes. Art. 1804e, Rev. Stat. State v. Connor, 86 Texas, 133; People v. Board of Canvassers, 29 N. E. Rep., 327; Talcott v. Philbrick, 59 Conn., 472; Fields v. Osborne, 21 Atlantic Rep., 1070.

Under the provisions of the Act of April 1, 1903, there are but two methods by which legal votes can be cast for a candidate for a county office. His name must either appear on the official ballot, as the nominee of some political party, after he had been chosen in accordance with that law, or his name must be written on the ballot by the elector casting it. Act of April 1, 1903, secs. 54, 75, 76, 77, 84, 86; Sanner v. Patton, 155 Ill., 553; People v. Wappingers Falls, 144 New York, 616.

If neither appellant or appellee were legally nominated as candidate for constable, then all votes cast for them on the printed official ballot of their respective parties were void, and the appellant, having received a large majority of the ballots written by the electors casting them, was legally elected constable. Act of April 1, 1903, secs. 76, 77, 84, 86.

A careful inspection of all the provisions of the Terrell Election Law demonstrates that nowhere in said statute appears any authority or right either expressly or impliedly for appellant in this case, or any candidate in any election to bring any proceedings either timely or otherwise to prevent the publication of an opponent's name upon the official ballot. The Terrell Election Law differs from the reform election law of many other states, in that it does not contain such provisions. These laws generally provide for the publication of the official ballot, by the officer who is charged with the duty of compiling it, in ample time to allow all parties interested full knowledge of the form, contents and arrangement of the official ballot. They also generally provide that any candidate or elector, observing any error or omission in said ballot after its preparation may file proceedings with some court or judge thereof, complaining of such error or omission. That the appellant being a member of the Republican party and not a member of the Democratic party, could not challenge the validity of the certificate filed by the county clerk by the chairman of the Democratic party, and had no standing in court in a preliminary proceeding to determine who was the legal nominee of the Democratic party is not only sustained by the soundest legal reasoning, but also has authority to support it. We refer to the Pennsylvania case of In re Wintons nominations, 2 Lack. Leg. N. (Pa.), 13, where it was held that only a member of the

party making the nomination could raise objections to its legality **or** regularity.

[From argument in support of a motion for rehearing which was overruled.]

The legislature in passing the Terrell Election Law, merely adopted the provisions of a system of election laws generally known as the Australian Ballot System. This system was originated in South Australia in the year 1857. It was afterwards adopted in England and from there spread to the United States where it has been adopted in many states. The provisions, similar to those under consideration in this case, have been attacked in the courts of Australia, England and many of the United States. Such provisions have been uniformly upheld and have been enforced by denying any validity or legal effect to any printed official ballot cast in favor of a candidate whose name had been placed on said printed official ballot in violation or without authority of law. Queen v. Parkinson L. R., 3 Q. B., 11; Mather v. Brown, 1 C. P. Div., 596; Howse v. Turner, 1 C. P. Div., 670; Monks v. Jackson, 1 C. P. Div., 683.

An inspection of the authorities from the different states of the American Union, where Australian Ballot Systems providing for official nominations and official ballots have been passed, will show them to uniformly hold that votes cast in favor of a candidate not nominated in accordance with such laws and whose name therefore appears improperly upon the official ballot, are illegal and void and will not be counted. People v. The Board of Canvassers, 29 N. E. Rep., 327; Talcott v. Philbrick, 59 Conn., 472; Fields v. Osborne, 21 Atlantic Rep., 1070; Price v. Lush (Montana), 24 Pac. Rep., 749; Bowers v. Smith, 111 Missouri, 45; Bladen v. Philadelphia, 60 Pa. St., 466, and Pearce v. Morrice, 2 Ad. and El., 96. Such being the case it should be held that the legislature in adopting the reform election law in this state, known as the Terrell Election Law, intended to adopt the judicial construction of it that similar laws had received in other statutes. This is a universal rule of statutory construction and has been followed in this state. See the case of Brothers v. Mundell, 60 Texas, 240.

Another ground which we think should impel the court to hold that the votes received by appellee and which were attacked by appellant in this proceeding should not be counted, is that they were cast in express violation of mandatory statutes. The authorities generally hold, where ballots cast are not in accordance with statutes regulating the election, that if the statutes violated were directory only, they will be counted, but if mandatory, they will not be counted. It must be admitted that the provisions of the Terrell Election Law which prohibited the printing of appellee's name upon the official ballot, are mandatory, because it is impossible to conceive of any words the English language affords which could have been added to the section of the statutes in question that would have made them any more mandatory. In this connection we desire to say, that we do not believe the fact that the legislature did not in express terms prohibit the counting of ballots such as those received by appellee can possibly have any bearing upon the question as to whether the statutes are mandatory or not, because if the statutes had forbidden the counting of such votes,

there would have been no room for construction. "A clause is directory when the provisions contain mere matters of direction and no more, but not so when they are followed by words of positive prohibition." Bladen v. Philadelphia, 60 Pa. St., 466; Pearce v. Morris, 2 Ad. and El., 96. We believe that the proper rule in determining whether a statute is directory or mandatory, is laid down by this court in the case of State v. Connor, 86 Texas, 133, in which the court says, "prohibitory words can rarely if ever be directory. There is but one way to obey commands, 'thou shalt not,' which is to abstain altogether from doing the act forbidden."

The courts have uniformly held that when the statutes expressly or by fair implication declare any act to be essential to a valid election or that an act shall be performed in a given manner and in no other, such provisions are mandatory and exclusive. 15 Cyc. of Law and Procedure, 317; McKay v. Minner, 154 Mo., 608, overruling Bowers v. Smith, 111 Mo., 45.

*E. H. Vasmer* and *P. H. Briant,* for appellee.—In the absence of fraudulent conduct on the part of the voters, the sole inquiry should be, for whom did a majority of the electors cast their votes? Act April 1, 1903, sec. 107; Fowler v. State, 68 Texas, 34; McKinney v. O'Connor, 26 Texas, 11; State ex rel. Millican v. Phillips, 63 Texas, 393; Hunnicutt v. State, 75 Texas, 239; Trueheart v. Addicks, 2 Texas, 221; Cooley Const. Limit. (4th ed.), Star pp. 618, 619, 625.

The placing of additional names than those nominated upon an official ballot, by the proper authorities, in the absence of fraud or collusion, is not such an irregularity as will avoid an election. Bowers v. Smith (Mo.), 17 S. W., 761; Bowers v. Smith, 111 Mo., 45; DeBerry v. Nicholson, 11 Am. State Rep., 771.

The provisions of the statute regulating the manner and form of providing a candidate for each political party for the various offices to be filled by an election, are merely directory; and no such provision can be considered mandatory and imperative unless the statute expressly declares that a compliance with such requirements is essential to the validity of the election. Fowler v. State, 68 Texas, 35; DeBerry v. Nicholson, 11 Am. State Rep., 771; Bowers v. Smith, 111 Mo., 45.

The intendment of the Terrell Election Law being that each political party should be represented upon the official ballot by a full ticket of county and precinct officers, and having provided, in part, the method for their nomination, and said regulations having been complied with in every particular, when a contingency arises, such as the death of a nominee at a time when it is manifestly too late to call another primary, and a physical impossibility to nominate on primary election day, it is but a reasonable compliance with the statute, if the Democratic Executive Committee fill the vacancy upon the ticket by their appointment, to the end that a full ticket may be presented to the voters as is contemplated by the law.

It is the right of each candidate that the official ballot be submitted to the voters with none other than legal nominees appearing thereon; and this right extends to and includes the subordinate right of demanding that the county clerk, in the preparation of the official ballot, shall

arrange the same in the manner and form prescribed by law, and shall place thereon only the names of those legally belonging there; and to secure the possession and enjoyment of this right, a candidate may invoke the remedy of mandamus when such right is impaired or violated by the refusal of the county clerk to prepare and issue the official ballot in the form prescribed by law. Kimberly v. Morris, 87 Texas, 638; People v. Board of Aldermen, 31 N. Y. App. Div., 438; Kimmerer v. State, 129 Ind., 589; Taylor v. Kolb, 100 Ala., 603; People v. Board of Canvassers, 129 N. Y., 370; Davies v. McKeeby, 5 Nev., 369; State v. Marston, 6 Kan., 524; State v. Judge, 48 La. Ann., 847; Giddings v. Blacker, 93 Mich., 1; People v. Cline, 63 Ill., 394; State v. Saxton, 11 Wis. 27.

WILLIAMS, ASSOCIATE JUSTICE.—This case is before us upon certificate from the Court of Civil Appeals for the First District, as follows:

"A. L. Kulp brought this proceeding under Chapter 7, Title 36, of the Revised Statutes of Texas, to contest the election of Thomas L. Railey to the office of constable of precinct No. 1 of Harris County.

"The case made in substance by Kulp was that he had been nominated by the Republican party at a delegate convention held on July 16, 1904, for the purpose of nominating candidates for county and precinct offices for that county. That the Democratic party had nominated candidates for all county and precinct offices at a primary convention duly held on Saturday, July 9, 1904, for that purpose, at which time one W. W. Glass was nominated as the candidate of the Democracy for the office in question.

"Glass died on the 24th day of October, 1904, and on the 28th of October, 1904, the members of the Democratic Executive Committee for Harris County representing those voting precincts situated in justice precinct No. 1, met and undertook to nominate a candidate to fill the vacancy on the Democratic ticket occasioned by the death of Glass. Such members of the committee selected Railey as a candidate for the position. His name was duly certified to the county clerk for a place on the official ballot as such nominee and was so placed thereon by the county clerk.

"At the general election held on November 8, thereafter, Kulp received 1221 votes and Railey received 2697 votes. Most of the ballots cast for each were upon the printed official ballot on which the names of each appeared in print as candidates for their respective parties for constable of precinct No. 1. Some ballots were cast for each, however, on which the voters wrote the name of the person voted for. Of these Kulp received a clear majority and the validity of the votes thus cast is in no way assailed.

"Kulp claimed that Railey had not been nominated according to law, that his name had no place on the official ballot as a party candidate, and that therefore all official ballots cast for him were unlawful and should not have been counted.

"He further claimed that should it be conceded that he also had been irregularly nominated, still he was entitled to the office because he had received a majority of the written ballots.

"The trial court after hearing the facts as stated above gave judgment for Railey.

"Kulp appealed and this court affirmed the judgment. No opinion was written, but we affirmed it on the ground that under the Act of 1903, General Laws, Chapter 101, by a timely proceeding, the name of any one could be excluded from the official ballot as a party candidate who had not been nominated according to the forms of law, but that as no such proceeding had been had and as no fraud was alleged and the voters had in good faith cast a majority of the ballots in favor of Railey, Kulp could not now be heard to question the regularity of the official ballot.

"The cause is now pending before this court on motion for rehearing. We respectfully certify for your decision the question:

"Did we err in affirming the judgment upon the ground stated?"

The case has been argued in this court upon the assumption that the decision of the Court of Civil Appeals was based wholly upon the failure of appellant to make objection to the official ballot before the election was held. We do not so understand the certificate. That fact is mentioned as only one of those which influenced the conclusion that appellant can not now be heard to question the regularity of the official ballot; the other facts being that an election has been held in which there was no fraud and in which the voters, in good faith, cast a majority of ballots in favor of appellee. All of these facts must be considered in answering the question whether or not the court erred "in affirming the judgment upon the ground stated." In our opinion, the fact that the appellant made no complaint before the election is not essential to the correctness of the decision. If the statutes referred to contained provisions requiring or permitting persons, such as he, to take steps before the election for the correction of such irregularity as that of which he now complains, this, of itself, would be a strong indication of the intent of the legislature that the validity of the ballots should not be questioned after the election upon such a ground. The statute makes no provision for such a proceeding, and, while it is true that it confers rights upon some persons and imposes duties upon others which doubtless may be enforced in the courts before the election is held, it is not at all clear that the right is given to a nominee of one party to object to the placing upon the official ticket of the opposing party the name of a person, as its candidate, upon the sole ground that such person has not regularly received the nomination of that party. Nor is it clear that appellant, if he had the right, had also the opportunity, in this instance, to avail himself of it. These are considerations which need not be elaborated, as we are of the opinion that they do not control the disposition of the question certified.

The decision must necessarily turn upon the question whether or not the law makes void, or forbids the counting of such votes as those upon which appellee's election depends. Admitting that no provision is made for candidates of one party to inquire, before election, into the regularity of nominations of candidates of an opposing party whose names are placed upon the official ballot, it by no means follows that irregularity in such nominations may be urged after the election as

grounds for invalidating ballots based upon them. After being defeated at a free and fair election by the votes of the opposing party appellant's only complaint is that the candidate for whom those votes were cast was not regularly nominated by that party before the election. It would seem that the election itself ought to be a sufficient answer to this position. Certainly success in maintaining it would be a curious result of an effort on the part of the legislature to promote fairer elections. To justify a court in thus rejecting the ballots of voters invested by the constitution with the elective franchise who voted fairly and in good faith to fill an office which the constitution required to be filled at that time and by such voters, nothing will suffice short of a clear legislative command. This is the principle uniformly applied in determining such questions. Nothing of the kind is found in the statute of 1903. This statute provides for official ballots, one for each party, containing the names of its nominees, and these ballots are, by specified officers, to be prepared and put in the hands of voters, officially stamped as the ones authorized by law, and through them and no others, except in certain contingencies unimportant here, the voters are to exercise their right to vote. In order that the will of the people composing the parties may find full and fair expression in the nomination of candidates, the primaries and conventions for that purpose are to be held on specified days and are regulated by the statute in such way as to throw around them protection similar to that given to general elections. The names of nominees are to be certified in a prescribed manner to the county clerk and he is to prepare the official ballot of each party, containing the names of those thus shown to have received the nominations, and to furnish them to the election officers who, in turn, are to furnish them to voters. The statute forbids the placing of any name on the official ballot except those nominated at the time and in the manner provided, with some exceptions which need not be stated. No provision is made for supplying a vacancy caused by the death of a nominee; an omission which has been supplied by a statute adopted since the election in question.

But while this course of procedure in making nominations is plainly prescribed, there is nowhere in the statute a provision that votes shall be void or shall not be counted because of a departure from the rules laid down in the making of nominations. On the contrary the general scheme of the act is against such an idea. All questions of that sort are determined for the voter, before the election, by the official ballots. By minute directions and commands addressed to the officers, the law seeks to secure the formation of a ballot which shall show to the voter that the preliminaries have been arranged. Most of these commands can be enforced otherwise than by defeating votes after they have been cast, and many have attached to them the sanction of severe penalties for their violation. In some instances it is expressly provided that votes shall not be counted if certain rules are not observed; but, as we have said, there is nothing to indicate a purpose that questions arising out of the making and certifying nominations shall affect the validity of an official ballot after it has been voted. The voter has nothing to do with the making up of the ballot, but is required to use it, in order to exercise his right to vote. He can only vote for those whose names

are printed on it or strike them out and insert others. The ballot comes to him from the officers of the law, regular on its face and authenticated, both by the printing on it and by the signature of the judge of election, as the ballot which he is required to use. If it is in the power of the legislature to thus impose on voters, in exercising their constitutional right, the necessity of voting tickets prepared for them in advance, and yet to defeat their choice, not for any act or omission of their own, but because of an antecedent dereliction of the officers appointed by law to prepare the ballots, certainly no purpose to do so can be imputed to the legislature without the clearest expression of it. It was unnecessary to expressly provide against such consequences, for the statute was passed with the knowledge of the rules of construction before stated which this and almost all other courts apply to such laws. Fowler v. The State, 68 Texas, 34; Davis v. The State, 75 Texas, 424; State v. Phillips, 63 Texas, 393.

The Davis case involved so serious an objection to an election as that, in part, it was not held at the places required by law, arising from the fact that the commissioners' court had made only one election precinct out of the town of San Marcos when the law made a precinct of every ward in the town. Conceding that the law had been departed from in establishing the precincts before the election the court said: "But the question is—the court having established the precincts not in conformity with this provision and the election having been fairly held in the precincts so established, without objection from any quarter—should it be declared illegal? . . . Was it the purpose of article 1665 of the Revised Statutes not only to direct that the Commissioners' Courts should make each ward of an incorporated town, village, or city a voting precinct, but also to provide that in the event of their failure to do so the election as to precincts affected by such failure should be declared a nullity? The main design of all election laws is, or should be, to secure a fair expression of the popular will in the speediest and most convenient manner, and we think a failure to comply with provisions not essential to attain that object should not avoid the election, in the absence of language clearly showing that such was the legislative intent." It is true that all the decisions of this court on the subject were controlled by laws very different from that of 1903, and it is true that the socalled reform election laws, which have been adopted in recent years and which, in their general character at least, are followed by our statute, have introduced many new regulations much more stringent in character than those formerly existing; and the very nature of some of these may be such that they will be fatal to ballots cast in disregard to them without an express declaration to that effect; but this can not be said of the provisions upon which this case depends. The same rule of construction always applied to other election laws can be and has been applied to them; and that is that they are not to be allowed to defeat the will of a majority of the voters fairly and freely expressed at the general election in accordance with the provisions regulating it, when they contain no words expressive of such a purpose. This is well sustained by the best authority. In New York, a clerk charged with the duty of making up the official ballot placed names upon it as the nominees of one of the parties which had made no nominations for the

offices named. The Court of Appeals, in a proceeding begun to arrest this action before the election, held that it was unauthorized by and in violation of law, but, in another proceeding to contest an election in which the ballots had been actually voted, held that the votes could not be thus defeated, saying: "The ballots used were official ballots, provided by the county clerk, whose duty it was, under the law, to prepare, print, and distribute them to subordinate officials, whose duty in turn was to place them in the hands of the inspectors of election of each election district in the county for use at the election. The printed endorsements, including the authentication by the county clerk required by the election law, appear in due form on the outside of the ballots. The ballots were regular in form in every respect. There was nothing within or upon the ballots from which a voter could know that the ballot was not made up in exact conformity to the law. It was impossible for him to ascertain from an inspection that the candidates for state and judicial offices, printed in the column of the regular Democratic party, had not been regularly nominated by that party, or that the clerk in arranging and printing the ballot, had not inserted the names with full authority. The effort in this proceeding is to disfranchise innocent voters because of a latent defect in the official ballot furnished by the state, not discernible on inspection, which ballot they were compelled to use; the defect consisting in the unauthorized insertion therein by a public official, charged with the duty of making up and printing the ballots, of names of candidates in a party column not duly nominated by such party. . . . We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake, or even the willful misconduct, of election officers in performing the duty cast upon them. The object of elections is to ascertain the popular will and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstructions to make the right of voting insecure and difficult. There can be no justification for the claim in this case to disfranchise the 681 voters in Queens County who voted for state and judicial officers by using the party ticket and emblem of the Regular Democratic party of Queens County, unless by force of some imperative provision of statute, which admits of no other construction." (People v. Wood, 42 N. E., 536.) The same principles were applied in Stackpole v. Hallahan, 16 Montana, 40, where many supporting authorities are cited, and the previous case of Price v. Lush (10 Mont., 61) is greatly modified, if not overruled. In Massachusetts, the law required that the ballot should have upon it an official endorsement and that the voter, when voting, should fold the ticket so as to expose the endorsement, and that no ballot without the endorsement should "be deposited in the box." Ballots were voted at an election without this endorsement, and in a contest as to their validity the court said: "Apart from evidence the form and appearance of the three ballots at least warranted the board in assuming that the ballots were official within section 1 of the statute. If official ballots, they were not forbidden to be counted by the words of the statute. It is true that section 230 prohibits ballots like these being deposited in the box, but this is not equivalent to prohibiting their being counted in

case they are deposited without remark. If not allowed to be deposited, the voter could get a perfect ballot and cast his vote. If allowed to be deposited and not counted, the voter is disfranchised. The latter result is not to be admitted without very clear words, and such words would raise a constitutional question which we do not decide." O'Connell v. Matthews, 177 Mass., 521; Lindstrom v. Board of Canvassers, 94 Mich., 467. The facts of these cases were much stronger in favor of the contestants than those under consideration, and the decisions in our opinion correctly state and apply the principles governing the subject.

We answer that the Court of Civil Appeals did not err in affirming the judgment of the district court on the ground stated.