**STATE ex rel. PACE v. LOGAN.   (No. 1644.)**

Court of Civil Appeals of Texas.   Beaumont.
April 3, 1928.

Rehearing Denied April 12, 1928.

**1. Elections ⬅227(1)—Ballots of persons entitled by Constitution to vote and voting in good faith may not be rejected by court in absence of clear legislative command.**

Court is not justified in rejecting ballots of persons invested by Constitution with elective franchise, and who voted fairly and in good faith, unless there is a clear legislative command to reject such ballots.

**2. Elections ⬅227(1)—Noncompliance with provisions of election laws not essential to secure fair election should not avoid election unless statute clearly requires it.**

Failure to comply with provisions of the election laws not essential to secure a fair expression of the popular will should not avoid the result of the election, in the absence of language in the election law clearly showing legislative intent to reject ballots.

**3. Elections ⬅228—Illegal creation of new voting precinct within six months before city election held not to require rejection of ballots cast at new precinct (Port Arthur City Charter, art. 1, c. 2, § 6).**

Port Arthur City Charter, art. 1, c. 2, § 6, (Sp. Laws 1911, c. 52), providing that no change should be made in voting precincts within six months before city election, *held* not to require rejection of ballots of persons entitled to vote and voting in good faith at voting precinct created within six months' period, since charter does not expressly show legislative intent to disenfranchise voters under such circumstances, or provide for discarding ballots as is done in Rev. St. 1925, arts. 3008, 3012, and article 3018 (Rev. St. 1911, arts. 3011, 3012),

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the new precinct having been established in good faith and election fairly conducted.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Proceeding by information in the nature of quo warranto by the State, on the relation of Perry Pace, against J. P. Logan. Judgment for defendant, and relator appeals. Affirmed.

A. A. Gunter, of Port Arthur, and Howth, Adams & Hart, of Beaumont, for appellant.

V. J. Wistner, of Port Arthur, King & Jackson, of Beaumont, and Robert A. Shivers, of Port Arthur, for appellee.

O'QUINN, J. This is a proceeding by information in the nature of a quo warranto by the state of Texas, upon the relation of Perry Pace, to oust appellee, J. P. Logan, from the office of mayor of the city of Port Arthur, Tex., and to place relator, Perry Pace, in possession of said office.

The relator, Perry Pace, and appellee, J. P. Logan, were opposing candidates for the office of mayor of Port Arthur, Tex., a city duly incorporated under and by virtue of the laws of the state of Texas by a special act of the Legislature of March 20, 1911 (Sp. Laws 1911, c. 52), in an election for city officials held May 24, 1927. According to the result as announced by the officers who canvassed the returns of said election, relator, appellant, received 2,992 votes, and respondent, appellee, received 3,135 votes, whereupon appellee was declared by the city commission of said city of Port Arthur to have been elected mayor by a majority of 143 votes, and he qualified and took possession of said office and has been in possession thereof ever since.

We shall not undertake to set out the pleadings of the parties, nor state the things done and undertaken to be done, as the pleadings are very lengthy and the other matters are not, in our opinion, necessary to the disposition of the case. Suffice it to say:

That relator, appellant, alleged that the Charter of the City of Port Arthur, art. 1, c. 2, § 6, provided that:

"The commission of said city shall have power, on its own motion, or on petition of one hundred (100) qualified voters of said city, to divide said city, or said commissioners precincts, by ordinance, into as many wards, or voting precincts, or districts as they may deem necessary or desirable for the good of the inhabitants thereof, for voting purposes or otherwise; and may change the boundaries of same, but no such division or change shall be made within six months before the city election next ensuing; such wards shall be as nearly square and regular in shape as practicable, and contain as nearly as practicable an equal number of voters."

That acting under said authority to establish voting precincts, the city commission, on January 7, 1924, created and divided said city into voting precincts or wards and named a place in each of the voting precincts thus created where elections should be held. That on January 20, 1927, respondent, appellee, who was then mayor of the city of Port Arthur, willfully and fraudulently, for the purpose of perpetuating himself in the office of mayor of said city of Port Arthur, and in violation of said section 6, c. 2, of the charter of said city, which provided that no change should be made in the voting precincts of said city within six months before the next ensuing city election, caused the city commission of said city to pass an ordinance creating out of a portion of two of the then existing voting precincts in said city a new voting precinct to be used in the primary election to be held on May 7, 1927, for the purpose of nominating city officials, and in the general election for city officials to be held May 24, 1927, and which new voting box is known herein as the "Grannis avenue" box. That the ordinance creating said new voting box was passed without authority, in violation of said section 6, c. 2, of the charter of said city, forbidding the creation of new voting precincts in said city within six months of the next ensuing city election, and that the voting precinct thus established was illegal and void. That the passing of said ordinance creating said new voting precinct was a willful and fraudulent attempt on the part of appellee to establish a voting place, including practically all of the negro voters in said city, for the purpose of influencing and controlling them and voting them for appellee. That appellee unlawfully and fraudulently designated certain ignorant, inexperienced, and incompetent negroes to act as election officers of said new voting precinct, inducing them to act according to his dictations in the conduct of said election and to induce all the negroes voting at said voting place to vote for him, appellee, at said election, for the purpose of thus unlawfully and fraudulently perpetuating himself in the office of mayor of said city. That 531 votes were cast at said voting box in said election, of which relator received 72 and respondent, appellee, received 459. That but for the counting of said 531 illegal, fraudulent, and void votes polled at said illegal and void voting precinct and box, the result of said election would have been different, in that of the remaining and only legal votes cast at said election relator received 2,920 and respondent 2,670, showing relator to have been elected by a majority of 244 votes. That said 531 illegal votes cast at said illegal and void voting box should be rejected and eliminated, and that the result of said election should be determined by the remaining votes cast at the regular and legal voting places, and that he was entitled to be declared the duly and legally elected mayor of said city.

In the alternative, relator, appellant, al-

leged that if it should be held that the Grannis avenue voting box was legally established and the votes thereat cast be in that wise legal, that he, nevertheless, was legally elected mayor, for in that there were 361 illegal votes cast in said election, 68 of which were cast at said Grannis avenue box, and 293 at the other boxes, naming the persons who cast said votes and stating their disqualifications, and that all of said illegal votes were cast and counted for respondent, appellee, which should be denied and thrown out, leaving appellant elected by a majority of 218 votes.

Relator prayed that said Grannis avenue box be declared illegal and void; that all ballots cast at said box in said election be declared and held illegal and not to be counted; that all ballots illegally cast at the other voting boxes in said election be rejected; that all the legal ballots cast for mayor at said election be recounted, tabulated, and the result declared; that respondent, Logan, be adjudged not entitled to the office of mayor of said city, and be held to be an intruder and ejected; that he, relator, Pace, be declared duly and legally elected to the office of mayor of said city, and that he have his writ for the possession of same; that he have judgment for all salary, fees, and emoluments of said office unlawfully drawn, taken, and appropriated by appellee, for costs of suit, and relief generally.

Respondent, appellee, answered by general demurrer, several special exceptions, general denial, admitted that he and relator were the only candidates for mayor in the alleged election, and says that he was fairly and legally elected as mayor, and that the true and legal result of said election was canvassed and declared; that he thereupon duly qualified and began the discharge of his duties as such mayor. Appellee then specially pleaded that a large number of voters who were not entitled to vote, naming them and stating their disqualifications, voted in said election, and that they all voted for relator, and that their votes should be rejected and not counted. His prayer was that relator take nothing by this suit, and that he have judgment declaring him the duly and legally elected mayor of the city of Port Arthur.

By supplemental petition, relator denied all the allegations in appellee's answer, and by trial amendment alleged that appellee was disqualified to hold the office of mayor, for in that on May 23, 1927, he had challenged one N. M. Barrier, Jr., and one L. Sinitiere to fight a duel with deadly weapons; and prayed that judgment be entered holding appellee disqualified from holding said office of mayor.

Appellee answered appellant's supplemental petition by plea in abatement, general demurrer, and general denial.

The case was tried before the court without the aid of a jury and judgment entered in favor of apellee. The case is before us on appeal.

At the request of appellant the court made and filed his findings of fact and conclusions of law, which are as follows:

### "Findings of Fact.

"I find: That on May 24, 1927, there was an election held in the city of Port Arthur, in Jefferson county, Tex., for the election of city officers. That said election was duly called and held as required by the city charter of the city of Port Arthur. That Perry Pace and J. P. Logan were candidates at said election for the office of mayor and commissioner of public order and safety of the city of Port Arthur, and that each were duly qualified to hold the office of mayor and commissioner of public order and safety. That said election was held in a fair manner and as required by the charter of the city of Port Arthur, and the returns thereof were duly made and certified to the city commission and all things done in connection therewith, as required by the charter of the city of Port Arthur. That according to the returns of the election officers, J. P. Logan was shown to have received a majority of 143 votes. That on the 26th day of May, 1927, the city commission declared the result of said election by Ordinance No. 913 duly passed and published, as required by the charter of the city of Port Arthur, and that J. P. Logan was by said ordinance declared elected as mayor and commissioner of public order and safety for said city, that he duly qualified as required by law and entered upon the discharge of his duties, and that he was at such time, and before and after such time, and now, duly qualified to hold the office of mayor and commissioner of public order and safety of the city of Port Arthur and perform the duties thereof. That, thereafter, to wit, on the 7th day of June, A. D. 1927, and after the said J. P. Logan had duly qualified as mayor and commissioner of public order and safety of the city of Port Arthur and was engaged in the performance of the duties of said office, the relator, Perry Pace, and his attorney, A. A. Gunter, appeared before the city commission of the city of Port Arthur and offered a resolution declaring that the Grannis avenue voting box had been illegally created, and declaring illegal all votes cast thereat, and declaring Perry Pace elected mayor and commissioner of public order and safety at said election, which resolution was put to a vote. Commissioners B. J. Wade and C. B. Moore voted for the adoption of said resolution, and said resolution was published in the Port Arthur News, a newspaper published at Port Arthur in Jefferson county, Tex.

"I further find that no notice of a contest of said election had been given at the time such purported resolution was adopted as aforesaid. I further find that there was no recount of votes cast for the office of mayor and commissioner of public order and safety prior to or at the time of the adoption of said purported resolution, and that had a recount of the votes been had, it would have been shown that J. P. Logan had received a majority of all votes of the qualified electors voting at said election. I further find that as shown by the returns of

the election officers, and as a fact, that J. P. Logan received a majority of the votes of the qualified electors of the city of Port Arthur and was duly elected to the office of mayor and commissioner of public order and safety at said election.

"I further find upon a recount by the court on the trial hereof of all the votes cast at said election that J. P. Logan received a majority of 179 votes of the qualified electors of the city of Port Arthur voting at said election, and that he was duly and legally elected to the office of mayor and commissioner of public order and safety of the city of Port Arthur. I further find: That on or about the 20th day of January, 1927, the city commission of the city of Port Arthur duly passed Ordinance No. 906, entitled 'An ordinance for the purpose of amending Ordinance No. 598 for the purpose of establishing an additional voting place to be known as ward 1, precinct 2, and repealing all ordinances or parts of ordinances in conflict herewith.' This ward is commonly known as the Grannis avenue box. That said ordinance was passed and took effect at a time within six months before the city election next ensuing, to wit, the city election held on May 24, 1927.

"I further find that said Grannis avenue voting box was created by the commission in good faith and for the convenience and upon the application of the citizens residing within the boundaries of said newly created business; that there was no fraud in the creation of said box nor was the same created for the purpose of aiding the said J. P. Logan or for the purpose of perpetuating him in office. I further find that the mayor and commissioner of public order and safety and other city officers of the city of Port Arthur are elected at large by the voters of said city and that the creation of said box at the time and in the manner did not affect the results of said election.

"I further find that at the time that sections 5 and 6, above quoted, were originally adopted, that the city of Port Arthur was divided into three commissioners' precincts, and that each precinct elected a commissioner by the qualified electors residing in said commissioners' precincts, respectively, and that the commission elected one of its number to serve as mayor; that since said time said system has been duly abolished and that all city officers are voted upon by all of the qualified voters of the city of Port Arthur at large.

"I further find that said J. P. Logan did not, on or about May 23, 1927, in the city of Port Arthur, Jefferson county, Tex., challenge N. M. Barrier, Jr., to fight a duel with deadly weapons or offer to fight a duel with the said Barrier, and that he did not on or about May 23, 1927, in the city of Port Arthur, challenge L. Sinitiere to fight a duel with deadly weapons or offer to fight a duel with the said Sinitiere. I further find that the said J. P. Logan has not since the adoption of the present Constitution of the state of Texas fought a duel with deadly weapons; that he has not sent or accepted a challenge to fight a duel with deadly weapons, either in this state or out of it; and that the said J. P. Logan has not acted as a second or knowingly assisted in any manner any one thus offending, and that no disqualification exists in this respect or in any other respect which would deprive the said J. P. Logan of the right to hold the said office of mayor and com-

missioner of public order and safety of the city of Port Arthur or any other office of trust or profit under this state.

"I further find that no conspiracy was formed or existed at any time to illegally influence the voters of the Grannis avenue voting box to cast their votes for J. P. Logan, or to in any manner interfere with the holding of said election fairly and legally.

"Conclusions of Law.

"I therefore conclude, as a matter of law, that the relator should take nothing by his suit, and that judgment should be rendered in favor of the respondent, J. P. Logan; that he be declared the legally and duly elected and qualified mayor and commissioner of public order and safety of the city of Port Arthur for the current term for which he was elected; that he is entitled to receive the emoluments of said office; and that judgment should be rendered accordingly."

There is also in the record a complete statement of facts, agreed to by the parties and approved by the court. After careful consideration of all the facts as reflected by the statement of facts, we approve the fact findings made by the court as having support in the record. This disposes of all of appellant's assignments of error attacking the findings of the court for lack of support in the evidence.

Appellant's assignment that the court erred in finding that appellee was not disqualified from holding the office of mayor of the city of Port Arthur by reason of having sent a challenge to fight a duel with named parties is overruled. We think the record supports the court's finding.

[1, 2] Several interesting and well-briefed propositions and counter propositions are presented by the parties, but we shall discuss only one of them, as we think that disposes of the case. It is contended by the relator, appellant, that section 6, c. 2, of the Charter of the City of Port Arthur, regulating the establishing of voting precincts, which provides that no change in the existing voting precinct lines, nor the creation of any new voting precinct, shall be made within six months before the city election next ensuing, is mandatory, and that the action of the commission establishing the Grannis avenue voting box out of portions of two other and existing voting precincts within less than six months before the city election was null and void and that all the votes cast at said box in said election were illegal and could not be counted. It is undisputed that if the votes cast at said box are rejected and not counted, relator was elected mayor. It is conceded by both parties that said provision in the charter is mandatory. But appellee says that it does not follow that the votes cast in said box should, therefore, be rejected and thrown out. This is the decisive question in the case. The decision of this question must necessarily turn upon the question

whether or not the law makes void or forbids the counting of such votes as those upon which appellee's election depends. To justify a court in rejecting the ballots of voters invested by the Constitution with the elective franchise who voted fairly and in good faith to fill an office which the law required to be filled at that time and by such voters, nothing short of a clear legislative command will suffice. This principle is uniformly applied in determining such causes. The charter did not make the establishment of a voting precinct in consonance with its provisions a condition precedent to the right to vote in such precinct by the voters residing therein—in other words, there is no provision in the charter, the law, that votes shall be void or shall not be counted in case of a departure from or a violation of the charter provision regulating the changing of voting precinct lines or the creation of new voting precincts within less than six months before the next ensuing city election. There is nothing in the charter to indicate a purpose that questions arising out of the changing of voting precinct lines or the making of new voting precincts shall affect the validity of a ballot after it is voted. The voter has nothing to do with the establishing of voting precincts, but must vote at such places as are established by the officers whose duty it is to fix same. If the Legislature has the power to require voters in the exercise of their constitutional right to vote within such bounds and at such places as have been fixed for them by officers whose duty it is to establish voting places, and yet to defeat their choice, not for any act or omission of their own, but because of an antecedent dereliction of the officers or persons appointed by law to establish and define the voting precincts or places where they must vote, undoubtedly no purpose to do so can be imputed to the Legislature without the clearest expression of it. Kulp v. Railey, 99 Tex. 310, 89 S. W. 957. Was it the purpose of the Legislature, in enacting the charter of the city of Port Arthur, not only to provide that no change should be made in the existing voting precinct lines, and that no new voting precinct should be made within six months before the next ensuing city election, but also to provide that in the event of the failure of the city officers, whose duty it was to observe said provision, to observe same, the election as to the precinct affected by such failure should be declared a nullity? The main design of all election laws is, or should be, to secure a fair expression of the popular will in the speediest and most convenient manner, and we think that a failure to comply with provisions of the law not essential to attain that object should not avoid the election in the absence of language in the law clearly showing that such was the legis-

lative intent. Davis v. State, 75 Tex. 424, 12 S. W. 957.

The cited case was a quo warranto proceeding, involving the right to the office of sheriff of Hayes county, Tex. The law at that time (article 1664, Revised Statutes 1879) provided that: "In each incorporated city, town or village, each ward shall constitute an election precinct." In establishing the voting precincts of Hayes county, the commissioners' court failed to observe the statute, in that they divided the town of San Marcos into two voting precincts, whereas it was an incorporated town and had four wards, which, under the law, should have each constituted an election precinct. It was contended that the election at the two boxes in the town of San Marcos was illegal, and that the votes cast at said two boxes should not have been counted, because the commissioners' court had established said two election precincts in violation of and without reference to the statute making each ward in an incorporated city, town, or village an election precinct. In passing upon the question whether the votes cast at said two voting precincts should be rejected, Judge Gaines, in an interesting and well-reasoned opinion, held that notwithstanding the statute required that "in each incorporated city, town or village, each ward shall constitute an election precinct," the failure of the commissioners' court to comply with this law did not invalidate the election, and that the votes cast at the two boxes as established by the commissioners' court should be counted. He bottomed his opinion on the statement:

"But there is no express declaration in the statute that a failure of the commissioners' court to make each ward an election precinct shall avoid the election. Nor does it contain any words from which it should be necessarily implied that such was the intention. If such is the meaning of the law, it must be arrived at by construction."

This holding was followed and approved in Bell v. Faulkner, 84 Tex. 187, 19 S. W. 480, where the same question on similar facts was involved, and in the later case of Kulp v. Railey, 99 Tex. 317, 89 S. W. 957, cited supra. There are statutes touching the right of suffrage and the conduct of elections in which the law provides that if the requirements of the law are not followed the vote shall not be counted. Article 3018 (3011-12), Revised Statutes 1925, provides that no ballot shall be counted (a) where the ballot does not bear the signature of the presiding judge, as required by article 3008; or (b) where there are two or more ballots folded together (article 3012); or (c) where the ballot is not numbered as required by article 3012. We take it that if the Legislature had intended that ballots cast as in the instant case should not be counted, it would have so enacted, and that an enlargement of the voiding of

ballots fairly cast by persons otherwise entitled to vote should not be made by judicial interpretation.

[3] But it is contended that as the law, section 6, c. 2, of the Charter of the City of Port Arthur (providing that no change in the existing precinct lines nor the creation of any new voting precinct shall be made within six months before the city election next ensuing), is mandatory, therefore the election at the Grannis avenue box, created in violation of said charter provision, is, void, and no vote cast there can be counted. It is not necessary to discuss the difference between directory and mandatory statutes. Where the law commands that under named conditions the ballots shall not be counted, it is peremptory and must be followed, but where, as in the instant case, there is no such command, the voter should not be disfranchised by legal implication. State v. Connor, 86 Tex. 133, 142, 23 S. W. 1103; Gallagher v. Church (Tex. Civ. App.) 142 S. W. 671, 672; Altgelt v. Callaghan (Tex. Civ. App.) 144 S. W. 1169.

The case was tried before the court below upon the issues made by the pleadings and upon a full recount of all the votes, said recount resulting in an increased majority of 36 votes or a majority of 179 for appellee, and the court found that the election was fairly conducted and free from fraud, and that the Grannis avenue voting precinct was established in good faith for the accommodation of the voters residing within its bounds, and not for the fraudulent purpose of perpetuating respondent in office. We have approved all the fact findings made by the court. This being true, and because of our holding that the election had at the Grannis avenue voting box cannot, as a matter of law, be held void, as contended by appellant, it follows that the judgment should be affirmed, and it is so ordered.

Affirmed.