## GILLASPIE v. McKINNEY.
### No. 9348.

Court of Civil Appeals of Texas. Galveston.
Jan. 10, 1930.

Rehearing Denied Feb. 13, 1930.

W. O. B. Gillaspie, of Huntsville, pro se.
A. T. McKinney and Dean & Humphrey, all of Huntsville, for appellee.

GRAVES, J. This was a suit brought in the district court of Walker county by the appellant, W. O. B. Gillaspie, as plaintiff, against the appellee, Sam McKinney, for title and possession of the office of mayor of the city of Huntsville. The trial was before the court without a jury; judgment went for defendant, and plaintiff appeals.

The issues and facts appear sufficiently in these findings and conclusions of the trial court:

"Findings of Fact.

"First: Huntsville, Texas, is a municipal corporation, organized under the General Laws of the State of Texas, and there was held in and for said City, on the third day of April, 1928, a general election, for the purpose of electing a Mayor and Aldermen and other officers of said City.

"Second: There was functioning in said City of Huntsville, prior to said City Election, a Democratic Executive Committee, of which W. Y. Barr was Chairman, and more than thirty days prior to said City Election, the plaintiff went to the said W. Y. Barr, and also to J. E. Parish, a member of the City Democratic Executive Committee, and requested of the said W. Y. Barr, as Chairman, and the said J. E. Parish, as a member of said Democratic Executive Committee, seeing them and making requests of them separately, however, that a Democratic Primary Election be held within said City, for

the purpose of nominating Democratic candidates for the various offices to be filled at the general election on April 3, 1928, and stated to the said W. Y. Barr, as Chairman, and J. E. Parish, as a member of said Committee, that he desired to become a candidate for the office of Mayor of said city, subject to the Democratic nomination.

"Third: The Democratic Executive Committee failed to order a primary election, but did order and give proper legal notice of the holding of a mass convention of the Democratic voters of said City, for the purpose of nominating a Democratic Ticket, to be submitted to the voters at the general city election, and the said mass convention was duly held, and thereat the Democratic voters nominated the defendant, Sam McKinney, as the Democratic candidate for Mayor of said City, and made nominations for all of the other offices to be filled at the general election to be held in and for said City on April 3, 1928.

"Fourth: After the holding of the mass convention of the Democratic voters, for the purpose of nominating candidates for the City offices to be voted on at the election to be held in and for the City of Huntsville on April 3, 1928, the plaintiff caused certain voters to make affidavit in compliance with the law, showing that he had not participated in a primary election which had nominated a candidate for the office of Mayor of Huntsville, and that he desired his name printed on the official ballot, as an independent candidate for the office of Mayor of said City.

"Fifth: The affidavits containing the applications to have plaintiff's name printed on the Official Ballot as an independent candidate for the office of Mayor of said City of Huntsville were presented by the plaintiff to Tom Ball, then the Mayor of said City, and the said Tom Ball, as Mayor of said City, thereafter caused to be made up and printed an official Ballot, on which appeared the Democratic Ticket and the Independent Ticket, and on the Independent Ticket appeared the name of the plaintiff as the candidate for Mayor, and on the Democratic Ticket appeared the name of defendant as the nominee for Mayor, together with the nominations made for all other City offices to be voted on at said election; and said Official Ballot was, by the Mayor of said City, furnished to the officers of the election in the various wards of said City prior to the holding of the general election on April 3, and the said Official Ballot was the only ballot furnished to the officers of the election, for use in said general election in and for said City, and the said Official Ballot was by the officers of election distributed to and used by the voters at said election, at the various voting boxes thereof, and the voters of said City of Huntsville in good faith used said Official Ballot, and none other, in casting their votes for the candidates for office in said City, and the voters of said City knew the plaintiff well and knew the defendant well, and no voter was denied the right to cast his ballot according to his own will and wishes, and a representative vote of the citizens of said City was cast at said City election, and at said City election thirty-eight (38) legally qualified voters cast their ballot for the plaintiff for the office of Mayor of said City, and Two Hundred eighteen (218) legally qualified voters cast their ballot for the defendant for the office of Mayor of said city, and the use of said Official Ballot resulted in a free and fair expression of the wishes and will of the voters of said City of Huntsville at said City Election.

"Following the holding of said election, the official returns were made thereof by the officers at the various voting boxes in said City, and the returns were, by the City Council of the City, canvassed in due and regular order, and the said City Council found and declared that the plaintiff had received for the office of Mayor Thirty-eight (38) votes at said election, and that the defendant had received for the office of Mayor Two Hundred Eighteen (218) votes at said election, and declared that the defendant had been legally elected Mayor of the City of Huntsville at said election; and, thereupon a Certificate of Election was issued to the defendant, showing his election to the office of Mayor of said City, and thereafter the defendant duly qualified and took charge of the office of Mayor of said City, and was in possession of said office, as such Mayor, at the time of the filing of this suit, and has been so in possession of said office, administering the same at all times since the filing of this suit, and is now in possession of said office, administering the duties thereof.

"Sixth: The plaintiff testified that he based the claim asserted by him in this suit to the office of Mayor on the proposition that votes cast for the defendant for the office of Mayor of the City Election on April 3, 1928, by the voters who used the Official Ballot prepared and furnished to the Election Officers by the Mayor, and by the Election Officers distributed to the voters were void.

"Seventh: It was not alleged or proved that the Democratic mass convention held for the purpose of nominating a Democratic Ticket for the City officers to be filled by the voters at the election to be held in and for said City on April 3, 1928, was not regularly petitioned for; but it was shown, and the Court finds, that due notice was given of said mass convention, and the same was held pursuant thereto, and a regular Democratic Ticket was nominated thereat, and that the defendant was nominated at said

mass convention for the office of Mayor of said City.

"Eighth: The Court finds that the plaintiff had due notice of the Democratic Convention and was present at said convention and had opportunity to present his name at said convention as a candidate for Mayor, but did not do so. At said convention the plaintiff protested any action that such convention might take in nominating Democratic candidates for City offices, on the ground that a Democratic Primary had not been called, instead of a mass convention; and, after said convention nominated the defendant, Sam McKinney, and adjourned, the plaintiff procured an affidavit of five or six voters, and procured his name to be placed upon the official ballot, as an Independent Candidate for Mayor, and, at the City Election, received thirty-eight votes to two hundred eighteen votes received by the defendant, as the Democratic candidate nominated by the convention, as aforesaid.

### "Conclusions of Law.

"The Court has concluded, as a matter of law, upon the facts hereinbefore found, that the plaintiff was not elected to and is not entitled to the office of Mayor of the City of Huntsville, and that judgment should therefore be that the plaintiff take nothing."

The quoted findings were filed upon appellant's written request, and no proper attack has been made upon any of them, wherefore all are binding upon this court. Under them, no other action than to affirm the judgment is deemed permissible here. It is true there appears therefrom some ground for the main complaint appellant seeks in his brief to present against it, to wit, that no primary election for the nomination of candidates for mayor at the ensuing regular city election was held at least thirty days prior thereto, pursuant to recitations of that purport in R. S. art. 3164, the mass meeting described in the findings being held instead; but we do not think that would invalidate the election so subsequently and lawfully conducted, even if appellant in the circumstances be considered as entitled to now raise the question, which we do not think he was. Our views upon both features are so well expressed by his able counsel in appellee's brief that we adopt this much as the opinion of this court thereon:

### "First Counter Proposition.

"The provisions of the Revised Civil Statutes of Texas for the nomination of party candidates for office are directory, and, where an election is fairly conducted and the voters use the ballot furnished them by proper authorities and there is no express statutory provision that a ballot of a particular kind or character shall not be counted, the voters are entitled to have the ballots cast by them counted and the result declared in accordance with the will of the majority of the qualified voters at the election.

### "Second Counter Proposition.

"The City Democratic Executive Committee of Huntsville having called a mass meeting of the Democratic voters of the city for the purpose of nominating Democratic candidates for the offices to be filled at the general election on April 3, 1928, and such mass meeting having been held and the nominees thereof certified to the city council of the city, and the city council having caused an official ballot to be prepared and printed for use by the voters at the general election, and having distributed such official ballots to the election officials, and the election officials having furnished that, and none other, to the voters for use in the general election, and the voters having used that ballot, a party whose name was, by his own procurement, printed on such official ballot as an Independent candidate for office, and who knew of and by injunction did not prevent the printing of the name of another candidate as the Democratic nominee on such official ballot, has no legal complaint, where the majority of the qualified voters cast their ballots in such election for his adversary.

### "Authorities.

"Article 3164, Revised Civil Statutes of 1925; article 3018, Revised Civil Statutes of 1925; Kulp v. Railey, 99 Tex. 310, 89 S. W. 957; Altgelt v. Callaghan (Tex. Civ. App.) 144 S. W. 1116; Gallagher v. Church (Tex. Civ. App.) 142 S. W. 671; Johnston v. Peters (Tex. Civ. App.) 260 S. W. 911; Turner v. Teller (Tex. Civ. App.) 275 S. W. 115; State ex rel. Pace v. Logan (Tex. Civ. App.) 5 S. W.(2d) 247.

"Article 3018 of the Revised Civil Statutes of 1925 sets out the kinds of ballots which shall not be counted by the officers of election, and these are the following:

"The judge shall count no ballot where two or more are folded together, or that does not bear the judge's signature, or is unnumbered, or, if on examination by the judges, the judge's signature is found to be a forgery.

"It is held in numbers of decisions that ballots not specifically mentioned in article 3018 must be counted, in order to ascertain the will of the voters.

"It is specifically held in the case of Kulp v. Railey, 99 Tex. 310, 89 S. W. 957, by the Supreme Court of Texas, that the provisions of the Revised Civil Statutes of Texas for the printing of an official ballot are directory, and that, if the name of a candidate is printed on the official ballot as the nominee of a certain party, the voters using such official ballot have a right to have their

votes counted, even though the nomination was not lawfully made, and that the provisions of article 2978, with reference to the making up of the official ballot, are directory only.

"So it is held in the case of Altgelt v. Callaghan (Tex. Civ. App.) 144 S. W. 1116, that a failure to comply with this article does not invalidate an election.

"So, in the case of Gallagher v. Church (Tex. Civ. App.) 142 S. W. 671, it is held that failure to comply with the requirement of the statute that each ballot should have written on it the word 'voted' is an irregularity, and does not invalidate the ballot, and that the voter is entitled to have the ballot counted.

"In this case, the court discussed the case of the State of Texas v. Connor, 86 Tex. 142, 23 S. W. 1103, where the ballots involved were such as by positive statutory enactment were forbidden to be counted, and here the court says that, if the law expressly prohibited the counting of a ballot for failure to comply with certain of its requirements, it could not be counted.

"In Johnston v. Peters (Tex. Civ. App.) 260 S. W. 911, the court held that it is the purpose of the law to give effect to the intention of the voters, and that ballots should be counted, except upon failure to comply with some requirement of the statute, where it is provided in the statute that no votes shall be counted.

"It is also said by the court in the last-cited case that it is the policy of the law to uphold the declared results of an election in all cases, except where there is clear and convincing evidence of an erroneous result, and that an election should never be declared void, except in cases where it is shown that the people have been deprived of the privilege of expressing their will at the polls.

"It is further stated by the court that the interest of the public is paramount to the interest of individuals, and public policy imposes upon the courts the duty of protecting the public from, rather than thrusting upon it, the expense, distractions, and strife of special elections.

"In the case of Turner v. Teller (Tex. Civ. App.) 275 S. W. 115, it is stated by the court that the statutory enactments relating to elections will be strictly enforced to prevent fraud, but deliberately construed to ascertain and effectuate the will of the voters, and that the only reasons why ballots not having on them the signature of the presiding judge shall not be counted is because the statute expressly provides that ballots not so indorsed shall not be counted, and the court further said that this statute will be liberally construed in ascertaining if its requirement has been complied with, and that substantial compliance is all that is required.

"In the case of State ex rel. Pace v. Logan, 5 S.W.(2d) 247, the Court of Civil Appeals at Beaumont held that the court is not justified in rejecting ballots of persons invested by the Constitution with elective franchise, and who voted fairly and in good faith, unless there is a clear legislative command to reject such ballots.

"The case at bar is conclusively ruled by the case of Kulp v. Railey, 99 Tex. 310, 89 S. W. 957, where the executive committee of a party, without warrant by the existing law, nominated a person whose name was thereupon printed upon the official ballot and who received a majority of the votes at a fair election, and where the point is made in the contest that the ballots cast for such person whose name was, without authority, printed on the official ballot should not be counted, the court holding that the provisions of the law as to official ballots and the printing of same were directory, and that the voters had the right to rely on the official ballot distributed by the judges of the election to them for use in the election. The court in this case said that this rule of construction always applied to election laws, and that they are not to be held to defeat the will of a majority of the voters, fairly and freely expressed at the general election, in accordance with the provisions regulating it, when they contain no words expressive of such a purpose, and reviewed with approval the decision of the New York Court of Appeals (People v. Wood, 148 N. Y. 142, 42 N. E. 536) upholding the validity of a ballot in a case where a clerk, charged with the duty of making up the official ballot, placed names upon it as the nominees of one of the parties which had no nominations for the offices named. The court also cites the Massachusetts law and the case (O'Connell v. Mathews, 177 Mass. 518, 59 N. E. 195) where the court held that, if the ballots are official, they must be counted, unless forbidden to be counted by the words of the statute.

No reversible error having been pointed out, the judgment of the court below has been affirmed.

Affirmed